DAVID W. EDWARDS *versus* JABEZ S. CURRIER.

A party plaintiff, purchaser of goods alleged to have been made in fraud of creditors, being a witness, may well testify concerning his motives and purposes in reference to the purchase of the goods.

Where the facts and circumstances attending the sale of goods are of such a character as to leave little doubt that the sale set up was invalid in law, and the court have good reason to believe the jury must have misapprehended the evidence or disregarded their duty, a new trial will be granted.

The plaintiff in this case sued out his writ upon a demand of $700 against Edwards & Goddard, and by an officer attached their goods in store and the next day purchased the same and surrendered the notes. An account of stock was taken and the amount found to be, nominally, eleven or twelve hundred dollars. These goods were subsequently attached by other creditors and this suit is brought against the officer, this defendant, for the value of the same.

EXCEPTIONS were taken to the rulings of HATHAWAY, J., and the evidence is reported on a motion for a new trial.

The verdict was for the plaintiff.

*N. Abbott*, counsel for the plaintiff.

This is an action of trespass against an officer for taking and selling goods on a writ. The plaintiff claims the goods by virtue of a bill of sale from the defendants in the writ. The bill of sale and delivery of the goods under it were *prior* to the attachment by the officer.

The defence set up is *fraud*.

The jury have found that there was no fraud, and the court will not disturb the verdict unless they shall perceive, from the evidence, that the jury clearly erred.

One of the badges of fraud relied upon is that the goods were sold without an account of stock being taken. Such is not unfrequently the case in a sale to secure a creditor, or rather to *pay* a creditor when the debtor is in failing circumstances, and the goods are insufficient to pay the debt.

Besides the plaintiff had, the night before the sale, attached all of the goods to secure his claim, and believing that he could not make out of the *whole* more than enough to satisfy his claim, he refused to relinquish his attachment unless he could have a bill of sale of the *whole*. By the consent of both parties he took a bill of sale for the *whole*, and gave up notes to the amount of seven hundred dollars.

The second badge of fraud relied upon, is that the goods are worth much more than the sum paid for them, to wit: seven hundred dollars. Defendant's own testimony shows that they were worth much less. Defendant says he sold them to the best advantage he could and all he- got was three hundred and seventy-five dollars, and the net proceeds only amounted to two hundred and eighty-nine dollars, after deducting the expenses of sale.

But the defendant contends that between the date of the bill of sale and the attachment by the defendant the plaintiff *secretly abstracted* a portion of the goods. He testifies that he did not, and several witnesses testified that they noticed no change in the goods. Besides, the plaintiff could have no motive in secretly abstracting his *own* goods. They were his by absolute bill of sale, and he had left an agent, Miss Sawyer, to sell them out. If any goods were abstracted after the sale and before the attachment by defendant, they were abstracted by the defendants in interest. They were about the premises, while the plaintiff was at home in Liberty.

But if goods were abstracted by the plaintiff, or by the defendant in interest, or by any other person, still it is apparent from the testimony that the sum of seven hundred dollars could not have been realized from the *whole* goods sold under the bill of sale. They were *millinery* goods, many of them old and shop worn. They were variously estimated by witnesses from eleven to thirteen hundred dollars, *nominal* value. The goods which defendant admits he took and sold were estimated, even by the defendant's witnesses, at eight or nine hundred dollars, estimating them at

cost prices. Yet the defendant only realized from the proceeds of the sale two hundred and eighty-nine dollars, less than one-third of the *nominal* value. When a failure takes place *such* goods cannot be sold for anything like their nominal value. The evidence shows that he paid too much for the goods. She says the goods sold her by defendant at Boston prices amounted to eight hundred dollars.

Third badge of fraud relied upon is that plaintiff's vendors, or one of them, acted *fraudulently*. I need not argue the question whether they did or not, as there is no evidence in the case tending to show that the plaintiff took any part in it, or even was cognizant of it, even if such were the fact.

The instructions were all given as requested, and only *one* legal question arises in the case, and that is a question of the admissibility of evidence. The plaintiff's counsel offered to prove by the plaintiff himself that in the purchase of said goods he acted in good faith, and had no intention of defrauding creditors. Defendant's counsel objected, but the court overruled the objection.

It has been settled by this court that a witness may testify as to his *purpose* or *intention*, when he did an *act* which is subsequently brought into question. Thus a pauper may testify with what *intention* he left a town and took up his residence in another town. So overseers of the poor may testify with what *intention* they furnished supplies to a pauper. Corinna v. Exeter, 13 Maine R., 321. It would be a very singular rule of evidence that would preclude a witness from testifying to his intention in doing a certain act when the point in issue involves his *intentions* at the time of doing the act.

*A. P. Gould,* counsel for the defendant.

Such are the facts in this case that it is impossible to avoid the conclusion that the jury misapprehended the evidence and the instructions of the court.

The law relating to fraudulent sales of property is not quite as simple and as readily understood by a jury, as that of most other cases.

I know the reluctance of the court to set aside verdicts, as against evidence, and agree that in a balanced case, or one where the preponderance of evidence is not manifestly disregarded, the opinion of the jury should stand; but this court sits to correct the errors, at trials, and to see that no party suffers from the mistakes of the court, or the impulses of prejudice and passion, or the inattention of the jury; and it is as important to the administration of justice, that the mistakes of the jury should be corrected, as those of the court. This is of the class of cases in which the losing party would have been entitled to a second jury trial, under our former judicial system, by appeal; and I submit that under the present system, there should be less hesitation to set aside a verdict where there has been but one jury trial.

Fears as to the superiority of the present over the old order of things, have been sometimes quieted by the assurance that the *court* would see to it that parties did not suffer by the errors of a *first trial*.

In Wells v. Waterhouse, 22 Maine R., 131, this court held that if the verdict was clearly against the weight of evidence, they would set it aside.

In Goddard v. Cutts, 11 Maine R., 440, 443, the court held that "when called upon to decide whether the verdict is or is not against the weight of evidence, it must be weighed according to the rules established by law."

This may be an important consideration in looking at the evidence in this case.

I do not propose to examine very minutely the evidence. It cannot be necessary. There are certain facts undisputed, which, when allowed their proper legal effect, render the sale of Misses Edwards & Goddard voidable by their creditors.

There are several things in the case which arrest the attention.

Edwards was the *brother* of one and *cousin* of the other girl. He had kept close watch of them during the sixteen or seventeen months in which they were in trade, and knew

as much about their affairs as they knew themselves. He knew that they were largely insolvent; this he confesses.

His demands against them were less than seven hundred dollars, while their other indebtedness was nearly three thousand dollars. All the property they had was about seventeen hundred dollars' worth of goods in the store, about one hundred dollars in cash, and a lot of goods which were secreted with his knowledge, if not under his advice, two months before the sale to him; the value of which we failed to prove. They were afterwards clandestinely carried away from Augusta by plaintiff, and secretly taken to Newburyport, and there sold, at a sacrifice, by his sister.

Being sent for by his sister, and informed that the girls' creditors are pressing them, he goes down, and instead of taking security on their property, leaving the balance for honest creditors, he allows the girls to keep the money which they had, and the secreted goods, which he knew the creditors would not find, and takes an absolute conveyance of all the goods, furniture, and everything attachable in the shop. The value of which was not less than seventeen hundred dollars. He claims that they were worth about that in his writ; and the other proof shows conclusively, that the goods were worth from fourteen hundred to two thousand dollars, the witnesses varying. He thereupon took possession, and resisted the claims of creditors, claiming an absolute title to the whole property.

Lastly, and most important, he made an agreement to pay back to the girls the excess of the value of the goods, over his demands, *secretly*, or did and said what was tantamount to it.

Conscious that the possession of so large an amount of property would be evidence of a fraud upon the creditors, he secretly carried away a portion of the goods, after he got possession, and before the defendant went in, as an attaching officer.

These facts are all either undenied or are established by the weight of evidence.

Edwards v. Currier.

Now what are the legal rights of the defendant under such circumstances. He justifies as an officer holding the writ of Palmer & Co., and other *bona fide* creditors of the firm of Misses Edwards & Goddard.

" If there is mingled in the contract an attempt to delay or hinder other creditors, or to protect the property from them, beyond what may be necessary for the security of the mortgagee, the contract will be deemed to be fraudulent and void," is the language of this court in Brinley v. Spring, 7 Maine R., 241, 252.

*A fortiori,* if such intent was shown, in case of a sale, absolute on its face, and held up to other creditors as such.

If one has an *honest* claim against an insolvent person, and undertakes to get security for a much larger amount, he thereby renders his security *void* as to that part of the claim which *is* honest, as against *bona fide* creditors. " *The fraud corrupts and destroys the whole.*" Fairfield v. Baldwin, 12 Pick. R., 388, 398.

And upon the same principle, the plaintiff, by his act of taking a much larger amount of goods than was sufficient to pay his debt, rendered the sale to him void, without taking into view the fact of a *secret trust.*

The law requires a man who has a claim against a person whom he *knows* to be insolvent to deal fairly and *honestly* by the other creditors, and will not permit him to take *all* the property of the insolvent, (if it is more than enough to pay his debt) whether it be by way of *security* or *satisfaction.* And if he does so it is a *fraud* upon the others, and the sale may be avoided by them.

It was contended by the plaintiff's counsel at the argument to the jury that the sale ought to be sustained to the amount of plaintiff's demand, even if he did procure a much larger amount of goods than was necessary to secure it; and I am inclined to think the jury acted upon the suggestion. But this would be holding out a strong inducement to fraudulent concealment or covering of the property of insolvent

Edwards *v.* Currier.

persons; giving the party the chance to gain without the liability to loss, even if detected. The law is directly the reverse. It offers no such temptation to fraud.

In Holland v. Crafts, 20 Pick., 321, 338, it is held that " at law a conveyance cannot be held good in part and bad in part."

That was a case of fraudulent conveyance where a good consideration in *part* had been paid. The court held that the intent to defraud *in part* rendered the contract voidable.

Even " if a conveyance is made by one insolvent upon a good and *sufficient* consideration advanced to him, but not *bona fide,* and the purchaser is conversant thereof, it is void against creditors. How v. Ward, 4 Maine R., 207. See 2 Starkie's Ev., 616, et. seq..(4 Am. ed.)

" Where there is no dispute about the facts whether a conveyance is fraudulent or not is for the court." Jackson v. Mather, 7 Cow., 301. And, as I contend, there are facts *not disputed* in this case which render the sale void. Rea v. Alexander, 5 Iredell, 644.

" If a debtor, unable to pay his debts, in contemplation of approaching death, makes provision for his wife by the sale of a portion of his property for that purpose; though the purchaser agrees to pay *bona fide* debts with a part of the consideration, such sale is illegal and void as to creditors." Welcome v. Batchelder, 23 Maine R., 85.

WHITMAN, C. J., in that case, p. 89, remarks: " His agreeing to pay *bona fide* creditors with a part of it cannot alter the character of the transaction. If he had been content to purchase *simply enough* to indemnify himself for the liabilities he was under for his brother (the debtor) and for that purpose *solely,* it would have been otherwise."

If a man at the point of death may not make a sale of part of his property and receive part of the consideration *down,* or in the payment of a prior indebtedness to the vendee, and agree that the other part shall be paid to his widow after his death; if such a sale be declared void by this court,

will it uphold the plaintiff in procuring from the debtors in this case a sale of all their visible property, being twice enough to pay his debt, when it is proved by *undisputed* evidence that, whatever he realized from the goods which he was to protect from attachment, over the amount of his debt he would *refund to them?* And when he held himself out to the creditors of his vendors as the *bona fide* owner for full value, and that the girls had no interest in them? Would one who makes a secret provision for himself, at the expense of his creditors, stand any better in the eye of the law than one who made a provision for his widow? Let not the law be thus reproached.

It has been held in New Hampshire that "A bill of sale, absolute on its face, but attended with a secret trust, is fraudulent and void as against subsequent creditors even; and that the trust being admitted or proved, the fraud is an *inference of law,* which the court is bound to pronounce." Paul v. Crooker, 8 N. H. R., 288.

So, also, a conveyance *absolute* on its face, accompanied with a verbal agreement that it shall be *reconveyed* on payment of the purchase money, is void as against creditors. Winkley v. Hill, 9 N. H., 31; Tifft v. Walker, 10 N. H., 150.

Is a verbal agreement, made at the time of a sale of goods, absolute on its face, that they shall be disposed of by the vendee, and the proceeds, after satisfying the demand of the vendee, be paid over to the vendor, any less fraudulent?

See, also, Smith v. Lovell, 6 N. H., 67.

If in any way it is so arranged between vendor and vendee that the excess of value shall go to the vendor, it is a fraud upon his creditors. So all the cases upon this subject show. And although in this state it is a question of fact for the jury whether there is a secret trust; that fact being ound, or admitted, the law declares the sale void. 5 Maine R., 295; 23 Maine R., 221, 228.

It cannot be claimed for plaintiff, in the case at bar, that the sale to him was a mortgage, for he claimed an absolute

title to them, not simply an interest in them to the extent of his demand.

In Whittaker v. Sumner, 20 Pick., 399, 404, "where a debtor gave his creditor a note for the amount due, and delivered to him goods and a bill of sale.for a larger amount as security for the note, it was held that the bill of sale was fraudulent, as a transfer of the property against creditors."

In Shaffer v. Watkins, 7 Watts and Serg., 219, it is held that "A transfer of personal property which creates a trust, whether *secret* or *avowed*, in favor of the grantor, renders the transaction fraudulent and void, in legal contemplation, even though there may be mingled with it provisions in favor of creditors."

So in Jackson v. Bush, 20 Johns., 6, court held that "a conveyance by a person indebted at the time, absolute *on its face*, but intended to enable the grantee to sell the land and pay the debts of the grantor, *rendering the surplus, if any, to him*, is void as against his creditors."

In Clark v. French, 23 Maine R., 221, WHITMAN, C. J., p. 228, "If a deed be not *absolute in fact*, though in *form* it may be so, and a secret trust and confidence exist for the benefit of the vendor, in such case it should not only be held void against precedent, but *subsequent* creditors." This recognizes a secret trust as conclusively establishing the *mala fides* of the contract.

As to the duty of the *court* in these cases, see, also, Sherwood v. Maverick, 5 Greenl., 295, 297.

TENNEY, C. J. It is not in controversy that on June 11, 1855, R. G. Edwards and H. E. Goddard, who were in trade in the city of Augusta, were indebted on notes of hand, to the plaintiff to the amount of about the sum of seven hundred dollars; that on the evening of that day Joshua L. Heath, an officer, attached the goods of the debtors in their store, upon a writ in favor of the plaintiff and by his direction, and closed the store and took the key; that early the succeeding

morning the officer was in the store with the plaintiff and Edwards and Goddard; an account of the goods were represented as having been taken by the latter, amounting nominally to the sum of eleven or twelve hundred dollars, and they were transferred and delivered to the plaintiff without any particular examination on his part, of the quantity and quality, by a bill of sale, absolute in its form, and as consideration therefor, he surrendered his notes.

Subsequently the goods sold to the plaintiff were attached on writs in favor of creditors of Edwards & Goddard, who are not denied to be such in reality, and the officer took the same into his possession. The present action is trespass against the defendant, for taking the goods in favor of the plaintiff. The right to recover is resisted on the ground that the sale to the plaintiff was made by the vendors for the purpose of delaying and defrauding their creditors, and the plaintiff, knowing this purpose, aided them in carrying it into execution.

Much evidence was introduced at the trial on the question as to what was the purpose of the parties to the sale. The plaintiff being a witness, it was proposed by his counsel to ask him, if his intentions and purposes were simply to get security. The defendant's counsel objected to his testifying to his motives, and contended that he could only be permitted, like any other witness, to testify to acts done, and not to the operations of his mind. The judge overruled the objection, so far as to allow the plaintiff's counsel to ask him the following question: "Had you any other purpose or design, in instituting that suit, and taking the bill of sale, except to obtain payment of the notes which you held against the company?" Against the defendant's objection, he answered, "I had not. I had no other purpose or motive than to secure my debt."

The sale of the goods was so perfected that as between the parties to it, it was valid. The property having been delivered to the plaintiff, whether it was effectual to defeat he claim thereto, of attaching creditors, must depend upon

the motives of the parties to the transaction. Of these motives the plaintiff and his vendors alone had full and perfect knowledge. Under the law as it was, where parties to the suit were incompetent as witnesses, in such a case as the present, the vendor was allowed to testify, on the ground that his interest was balanced. And it was common practice to interrogate him touching his purpose in making the sale. That purpose being a material matter, it was proper to ascertain it, in any manner suited to show it. One not a party to the sale could not know the motives of those who were parties, and such question to him was improper; he could testify to facts within his own knowledge, having a tendency to expose the designs of those who participated in the transaction. No good reason is perceived for excluding absolute knowledge of those who possess it, and permit the same to be inferred from acts in some measure suited to disclose it. The plaintiff was a competent witness, under existing laws, and he was properly allowed to state the design which he had in becoming a purchaser of the goods in controversy.

The defendant relies upon his motion to set aside the verdict, as against the evidence introduced. The facts and circumstances attending the sale of the goods, shown by the testimony generally, is of a character which may well awaken a suspicion that the transaction was fraudulent against the creditors of the vendors. These facts and circumstances, so far as they tend to indicate the motives of the parties to the sale, come from a source where actual knowledge of their designs must have existed, and leaves so little doubt that the sale set up was invalid in law, that we think the jury must have misapprehended the evidence, or disregarded their duty.

*Exceptions overruled, Motion sustained,*
*Verdict set aside, and new trial granted.*