# REPORTS.

## LEE *v.* LAMPREY.

Where a subsequent attaching creditor defends upon the ground of want of consideration for the plaintiff's claim, and of a fraudulent purpose to cover up the defendant's property, a letter from the plaintiff to the defendant, written shortly before the date of the plaintiff's claim in suit, and tending to show the plaintiff's knowledge of the defendant's embarrassment, and a design to deprive the latter's creditors of an opportunity to avail themselves of their legal remedies, is competent evidence for such creditor upon the question of fraudulent purpose.

Evidence that the plaintiff received, on the defendant's account, a great portion of the funds of a firm of which the defendant was a member, and which had failed shortly before the date of the plaintiff's claim, is admissible for such creditor.

In such case, evidence offered by the plaintiff that he obtained and followed legal advice, in regard to attaching in the suit, is properly rejected.

Where several jointly attempt to accomplish a fraud, the declarations of one of them, made during the progress and in the prosecution of the joint undertaking, or accompanying and explaining acts done in furtherance of it, are evidence against the others.

Where evidence is received with proper limitations, but these limitations are not repeated in the charge to the jury, and counsel neglect to call the attention of the court to such omission at the time, it is too late for them to object because of it, after verdict.

ASSUMPSIT upon two promissory notes, made by the defendant, payable to the plaintiff, or order, on demand, with interest, the first dated February 1, 1860, for $3,300, and the second, dated February 2, 1860, for $1,500.

Most of the property of the defendant having been attached, the action was defended by one Ingalls, a subsequent attaching creditor, by leave of the court, on the ground of want of consideration and of a fraudulent purpose to cover the property of Lamprey from his creditors.

It appeared that J. S. Lamprey, the defendant, and C. M. Lamprey had, shortly before the making of these notes, been in trade, in partnership, at Milledgeville, Georgia, and had failed there in business about the 12th of January. The plaintiff (Lee) was a witness, called by the subsequent attaching creditor, and testified that he did not recollect that he had any knowledge of their expecting to stop. A letter of Lee to J. S. Lamprey, dated January 14, 1860, was offered by the defendant, and its admission was objected to, but it was received, subject to exception. Among other things, he says in it, "Clear all my property out before you come home. I do not think you had better come home for a month, if you are going to stop, for they will put you into chancery at once, and make a deal of trouble. Stay there and let me arrange your affairs here."

J. J. Marsh, an attorney, was offered as a witness for the plaintiff. It was proposed to show by him that he was consulted by Lee, and gave him advice upon which he acted in regard to attaching. The evidence was objected to and held inadmissible, and the plaintiff excepted.

C. M. Lamprey was a witness introduced for the attaching creditor. It was proposed to show by him a conversation he had had with J. S. Lamprey, after the commencement of the suit, relative to Lee's attachment. Objection was made, and it was admitted, to be considered by the jury, in case they should, upon the other evidence in the case, find there was any collusion between Lee and J. S. Lamprey as to the attachment.

J. S. Lamprey was a witness on the trial, introduced by the subsequent attaching creditor.

It was offered to show that J. S. Lamprey took funds of the firm from a very early date, without showing what became of them. Objection was made, and the evidence was admitted, subject to the plaintiff's exception; and the witness testified that Lee received a great portion of their funds on J. S. Lamprey's account; that a $400 and $450 note of the firm were sent to Lee, to liquidate a $1000 note, not of the firm.

A letter of J. S. Lamprey to C. M. Lamprey was offered and objected to, and admitted, to be considered by the jury, in case they should upon the other evidence find there was collusion between Lee and J. S. Lamprey.

The court, in the charge to the jury, did not advert to the fact that the declarations of J. S. Lamprey to C. M. Lamprey were to be considered against the plaintiff only in case they should find that there was collusion between the parties to the attachment, and the counsel did not call the attention of the judge to the omission.

The jury having found a verdict for the defendant, the plaintiff moved that it might be set aside and for a new trial, because of said exceptions.

*C. H. Bell,* and *Marsh & Newell,* for the plaintiff.

The conversations of Lamprey, especially after suit, and his letter, were not admissible against the plaintiff. Where a party comes in to prosecute or to defend in the name of another, the rules of evidence are not changed. Lamprey could not put in his own declarations. They were not against his interest. Such evidence must operate unjustly, because the jury could not help forming their opinion as to collusion, in part, from it, whatever caution was given them. Sometimes it is absolutely necessary to leave such a question to the jury, but here it was not, for Lamprey was a competent witness. The evidence that the plaintiff consulted counsel as to attachment was admissible as part of the *res gestæ,* and on the question of good faith. The court should have instructed the jury as to the manner of their receiving the evidence of Lamprey's declarations. The jury are not supposed to attend to what may be said by the court to counsel, as to the limitation of evidence, and do not, in fact. That counsel did not request the court so to instruct the jury makes no difference; for they waive no exception by refraining from interrupting the charge of the court. The other evidence objected to was immaterial, and tended to prejudice the jury.

*Wheeler & Hall* (with whom was *Hills),* for Ingalls.

BARTLETT, J.  Upon the question of fraud, evidence of the intent of Lee and of Lamprey, so far as it related to any design to deprive the latter's creditors of opportunity to avail themselves of their legal remedies, and of Lee's knowledge of the condition of Lamprey's affairs, was competent.  *Foster* v.  *Thompson,* 5 Gray 453 ; *Edwards* v. *Currier,* 43 Me. 483 ; *Blake* v. *White,* 13 N. H. 272. · The letter of January 14th was, therefore, properly admitted.

We do not think the mere fact that Lee consulted an attorney, and acted upon his advice in attaching, had any tendency to prove the claim in suit well founded in fact, or honest.  The points in controversy were the consideration and good faith of the claim.  The consultation was after the debt was alleged to have accrued, and the act of taking and following legal advice, in regard to attaching, of itself, " was equally consistent with the conflicting positions taken by the parties;" by Ingalls that the claim was unfounded and fraudulent, and by the plaintiff that it was an honest debt; no inference could have been drawn from it either way.  The mere fact, then, that such advice was taken and followed was immaterial. If the offer is to be regarded as a proposal to show what took place between Lee and Marsh, Lee's statements could not be received in his own favor, for they accompanied and explained no act which would be " evidence in his favor tending to prove the matters in issue," since the act of attaching was equally consistent with the honesty and validity of his claim and with its fraudulent character ; *Currier* v. *Boston & Maine Railroad,* 34 N. H. 506 ; 1 Greenl. Ev., sec. 108 ; and Marsh's advice to him, founded on such statements, could stand no better.  The evidence was properly rejected.

We think the evidence of the dealings with the partnership funds, between Lee and Lamprey, was competent in connection with the other evidence.  *Bridge* v. *Eggleston,* 14 Mass. 250 ; *Blake* v. *White.* If there was collusion between Lee and Lamprey, by means of this claim, to cover up the latter's property from his creditors, the design was still in the process of execution, and Lamprey's declarations, made in the prosecution of the joint undertaking, or accompanying and explaining acts done in furtherance of it, were admissible against Lee.  *Page* v. *Parker,* 40 N. H. 62 ; 1 Greenl. Ev., sec. 111.  Neither the particulars of the conversation nor the contents of the letter are stated, and, in the absence of any specific objection on the point, either made at the trial or urged in the argument, we take them to have shown such declarations.  This evidence was received with the proper limitations, and if the plaintiff had desired a repetition of them in the charge, he should have called the attention of the court to the matter at the time.  *Goodrich* v. *Eastern Railroad,* 38 N. H. 396 ; *Moore* v. *Ross,* 11 N. H. 557 ; *Belknap* v. *Wendell,* 36 N. H. 250 ; *Wright* v. *Boynton,* 37 N. H. 22.  As no other exceptions were taken there must be

*Judgment ·on the verdict.*