HIRAM BERKEY *vs.* GEORGE B. JUDD & ORANGE WALKER, late Partners, etc

November 23, 1875.

**Error Cured by Subsequent Proceeding—Refusal to Dismiss.**—An error committed in the denial of a motion to dismiss an action, on the ground of an insufficiency in the proofs, is cured by the subsequent introduction of sufficient competent evidence to supply such deficiency.

**Report of Referee Sustained on the Evidence.**—The evidence in this case considered in reference to the question of its sufficiency to support the finding of the referee, and the rule as settled in *Humphrey* v. *Havens,* 12 Minn. 298, followed.

**Evidence of Belief, Motive, or Intention.**—Whenever the motive, belief or intention of any person, whether a party to the action or not, is a material fact to be proved under the issue on trial, it is competent to prove it by the direct testimony of such person.

**Same—Proof of Fraud by another Act of Fraud.**—Another act of fraud is admissible to prove a particular alleged fraud whenever there is evidence that the two are parts of one scheme or plan of fraud, committed in pursuance of a common purpose.

**Statute of Limitations—Constructive Notice of Fraud.**—In an action for relief on the ground of fraud, constructive notice alone of the facts constituting it, such as the record of a deed in the register's office, is insufficient to set in motion the statute of limitations.

**Evidence—Opinion of Witness as to Meaning of Testimony of another Witness.**—It is inadmissible for one witness to testify as to the meaning of another witness in his testimony, or as to the sense in which he employs certain phrases.

**Parties to Actions—Suit against Surviving Partners for Fraud of Partnership.**—Plaintiff and defendants, with J. and one P., being copartners in business, P., in September, 1858, sold out all his interest in the firm to defendants and J., whereby they succeeded to all his rights and liabilities as such copartners. About the same time, and within a day thereafter, plaintiff, being the owner of one-ninth interest in and to all the partnership assets and good-will, made an agreement with defendants and J., whereby he agreed to sell and transfer, and they agreed to purchase, such his share or interest for a gross sum, to be paid in firm property, and equal, at an appraised value, to one-ninth part of the value of said partnership assets and good-will, after deducting all liabilities and debts, full payment of which was by them assumed. In carrying out this agreement, through the fraud of defendants and J., plaintiff was induced to believe that the total net value of such assets was much less than was really the fact, and consummated such agreement upon that basis, and he also received in part payment certain property to which the company had no title. After P. and plaintiff had thus sold out and retired from the firm, defendants and J., succeeding to all the rights, property and liabilities of the firm, continued the partnership business under the same firm name, and under the same articles of copartnership and terms in all respects, except that each took an one-third interest in the reorganized firm. Before this suit was brought J. died, leaving defendants sole surviving partners. This action for relief against such fraud is brought against defendants as such surviving partners. *Held*, that the action was properly brought, and there is no defect of parties.

**Power of Attorney to Convey Lands, Construction of.**—A power of attorney containing an authority to enter into the possession of, and to grant and convey, "all such lands and real estate whatever, situate, etc., in or to which the donors of the power are, or may be, entitled or interested," and also "to exercise general control and supervision over all such lands and real estate belonging to, or that may belong to, them," relates not only to lands belonging to the principals at the time of the execution of the power, but to after-acquired lands.

**Same—Execution of Deed by Attorney.**—When a deed purports to be an indenture of the principal, made by his attorney in fact, therein designated by name, it may be properly executed by such attorney by his subscribing and affixing thereto the name and seal of the principal alone.

On and for some years prior to September 24, 1858, the plaintiff and the defendants, George B. Judd and Orange Walker, together with Albert H. Judd and Asa H. Parker, were copartners in business as Judd, Walker & Co. This firm carried on a general logging and lumber business at Marine, in this state, having a saw-mill and store at that place, and being the owner of a large amount of pine lands and other real estate. The firm had also an one-half interest in a lumber yard and business carried on at St. Louis, Missouri, in the name of Judd & Leeds. George B. Judd lived at St. Louis, and had the management of the one-half interest in the firm of Judd & Leeds. Walker had charge of the store and the general business transactions at Marine. Parker looked after the logging interests of the firm, while the plaintiff had charge of the saw-mill and lumber at Marine, and Albert H. Judd, who lived in Illinois, took no active part in the business. In the autumn of 1857 all the partners agreed to a dissolution of the firm, to be effected in the following year. Pursuant to this agreement they all met at Marine, in the summer of 1858, where an inventory was made of the assets and liabilities of the firm, and, on September 24, 1858, and after some time spent in negotiation, Parker sold his interest, which was two-ninths, and the plaintiff his interest, which was one-ninth, to the Judds and Walker, they agreeing to pay the firm debts. Immediately upon the dissolution thus effected, the Judds and Walker formed a new partnership, under the old name, and continued the old business until January, 1865, when Albert H. Judd died, leaving the defendants sole surviving partners of the last-named firm. Upon the sale by plaintiff of his interest in the firm, it was agreed that he should receive in payment property of the partnership, at an agreed value, to the amount of $17,730.90, while Parker also received property to the amount of $35,000.00.

In 1867 the plaintiff brought this action to have the sale

or settlement of September 24, 1858, declared void as to him; that an account be taken of all the assets and liabilities of the old firm of Judd & Leeds; for judgment for the difference between the amount actually received by him and the value of his one-ninth interest in the firm; and for general relief. The grounds of plaintiff's claim were that the price he was to receive upon the sale was to be a gross amount, equal to his one-ninth interest; that the defendants fraudulently imposed upon him, as a true inventory of the assets of the firm, a statement from which the net value of the one-half interest in the firm of Judd & Leeds, amounting to $35,000.00, was fraudulently omitted, and in which were other omissions of assets, and exaggerated statements of the liabilities of the firm. He also alleged, as a second cause of action, that among the property taken by him in payment were certain described pine lands, of the agreed value of $4,260.90, which the defendants fraudulently included in the inventory of assets, and represented to plaintiff as belonging to the old firm, and which were taken in payment by plaintiff on the faith of such representations, but which lands had, in the year 1853, been sold and conveyed by the firm, at divers times, to John D. Ludden and Elam Greeley, all the conveyances having been executed on behalf of plaintiff by the defendant, Orange Walker, under a general power of attorney. The plaintiff further alleged that the sale made by him was to defendants and Albert H. Judd, as composing the new firm of Judd, Walker & Co., and that none of the facts constituting the alleged frauds were discovered by him until April, 1865.

The grounds of defence were that the sale or settlement by plaintiff was made to and with the old firm, and not the new firm, which was not formed till after the sale and settlement; that none of the representations alleged in the complaint were made or were fraudulent; that in the inventory the assets of the old firm were overvalued and its liabilities understated; that it was agreed that plaintiff should

receive, not the value of an one-ninth interest in the firm, but the gross sum of $17,730.90, by way of compromise, which sum was actually greater than the ,value of an one-ninth interest; that the plaintiff had at all times access to the books, etc., of the firm, and knew, or might have known, the condition of its property and debts, as well as any of the other partners; that an inventory was made up by the book-keeper of the firm, with the aid of all the partners; that long prior to the final settlement this inventory was equally accessible to all the partners, and was repeatedly examined, discussed and considered by all of them, including the plaintiff; that the lands conveyed to plaintiff were among the lands embraced in the inventory, and discussed and considered by all the partners; that they were not conveyed to plaintiff at the agreed value of $4,260.90, or at any agreed value; that such lands were never conveyed to Ludden and Greeley by the partnership, or otherwise; that at the time of the conveyance to plaintiff the defendants believed such lands to belong to the firm. The defendants also denied that they ever made any representations to plaintiff in regard to the inventory or the lands, or that plaintiff made the sale or settlement on the faith of any representations of the defendants, and they denied in detail all the allegations of fraud in the complaint. They also pleaded the statute of limitations and the non-joinder of the representatives and heirs at law of Albert H. Judd.

After the decision of the former appeal (reported 14 Minn. 394) the action was by consent referred to C. K. Davis, Esq. At the trial before him the statement mentioned in the complaint was introduced in evidence, and marked exhibit A, and is so referred to in the opinion. It appeared that at the beginning of each year a statement of the condition of the concern of Judd & Leeds was sent to the firm at Marine, and plaintiff testified, under objection and exception, that he did not examine any of those statements sufficiently to know the condition of that concern

and the state of its accounts; and that during the negotiations preceding the sale he did not examine the books at Marine sufficiently to know the condition and state of affairs of the firm. In the deposition of Ellis N. Leeds the witness, in answer to a question calling for a detailed statement of the assets and liabilities of the firm of Judd & Leeds, gave a detailed statement, one item of the assets being as follows: "Merchandise, (some bad, in petty ledger,) $13,977.56." At the trial one Wilkie, the book-keeper of the firm of Judd, Walker & Co., and a witness for defendants, was asked whether this statement represented the state of the books of the house of Judd & Leeds, or an inventory of its effects. He was also asked, What is a petty ledger? Both these questions were ruled out on plaintiff's objection, and defendants excepted. The other exceptions taken are fully stated in the opinion. The referee found that defendants were indebted to plaintiff in the sum of $5,459.88, with interest from September 24, 1858, making the amount of $10,032.10, and ordered judgment for that amount. A motion for a new trial was denied by the district court for Ramsey county, *Wilkin*, J., presiding, and defendants appealed.

*Bigelow & Clark*, for appellants.

*Henry J. Horn*, for respondent.

CORNELL, J.   Assuming that the referee erred in refusing to dismiss the action at the close of plaintiff's testimony, on the ground of the insufficiency of the evidence to maintain and establish the alleged cause or causes of action, this error was cured if, in the subsequent progress of the trial, sufficient competent evidence was introduced to supply such deficiency. The question then arises whether, upon the whole case, there is such a want of evidence in respect to any material fact found by the referee as will warrant this court in disturbing the finding on that ground.

The real turning-point in the controversy is upon a question of fraud charged against defendants, which is made the

ground for reopening a transaction which otherwise had long since been put at rest by the quieting effect of the statute of limitations. Two trials have already been had, conducted in each instance by able and experienced counsel, and with a like favorable result to plaintiff upon this question. In the former it was determined by a jury, in the latter by a chosen referee, whose judgment challenges such additional weight as conceded ability, professional experience and impartiality can give. So far as appears, no circumstance of bias, passion, or prejudice in any way contributed to the result at either of the trials, and the long interval of time between them raises a fair presumption that no such influence, if any ever existed, could have operated at the last. The case is now here for the second time, fully and elaborately presented on both sides. In the equally careful consideration which we have endeavored to give it we fully realize that in a case of this character, when so much time elapsed before the discovery of the alleged fraud, the rule requiring satisfactory proofs of its existence, instead of presumptions and conjectures leading to no certain conclusions, should be strictly upheld ; and though—sitting as a trial court with such evidence of fraud only as is disclosed by the paper-book, unaided by the manner and appearance of the witnesses, and other like circumstances frequently attending the conduct of a trial, and oftentimes rightfully influencing its result, but which can never be incorporated in a case— we might find it difficult to fully coincide with the referee in his findings of fact, yet upon a full consideration of the case, in connection with the facts already adverted to, we are not satisfied that such his findings are so clearly against the weight of evidence as to authorize an appellate court to set aside the report on that ground.

In case the fraud charged in either of the counts in plaintiff's complaint is sufficiently substantiated by the evidence to support the finding of the referee in that respect, the plaintiff is entitled to have the alleged settlement and

sale reopened and the rights of the parties adjusted in accordance with the actual agreement entered into between them, and this whether the finding in respect to the fraud specified in the other count is fully supported by the proofs or not.

In respect to the first count there is some evidence reasonably tending to sustain the finding of the referee in regard to the allegations of fraud therein set forth, and sufficient in our judgment, under the rule laid down in *Humphrey* v. *Havens*, 12 Minn. 298, to preclude this court from setting it aside as not supported by the evidence. Although it is true, as urged by defendants, that fraud is never to be presumed, but must be proved, yet this rule does not require direct, positive proof in all cases, but is satisfied if the facts and circumstances surrounding the alleged fraudulent transaction are such as reasonably point to the conclusion that a fraud was intended and actually perpetrated; and, when such facts and circumstances exist, their force and effect in determining the question is a matter peculiarly within the province of the referee to settle and decide.

If plaintiff's testimony is to be believed—and of its credibility the referee was the sole judge—the alleged dissolution and settlement, which resulted in his selling out to the defendants and withdrawing from the firm, was based upon an agreement whereby he was to accept, and the defendants were to convey to him, for his interest in the firm property and good-will, one-ninth part of its assets, exclusive of debts and liabilities, according to their appraised value; that in carrying out this agreement he was induced by the representations of Walker and Samuel Judd to believe that a certain exhibit, produced by them as an exhibit of the firm assets, contained a full and correct statement in amount and value of the entire aggregate assets and liabilities of the firm; and that, so believing, he ascertained therefrom the value of his one-ninth share, and selected and

received therefor an amount of firm property equal thereto according to its appraised value. It is not disputed but that these representations, if made, were false; that said exhibit did not, in fact, contain any part of the assets belonging to the firm which were represented by its one-half interest in the St. Louis firm of Judd & Leeds, and that plaintiff has never received anything on account of such interest. Defendants, at the trial, admitted a knowledge of the character of this exhibit, and did not deny that they were fully aware of it at the time of the settlement. There is also testimony tending to show a knowledge on the part of George B. Judd of the use which was made of this exhibit in effecting the settlement. In view of this testimony, and the superior advantage always possessed by a trial over an appellate court in detecting the motives and influences governing the conduct and affecting the credibility of parties and witnesses brought before it, it cannot be said that the referee was not warranted in his conclusion that defendants coöperated in practising a fraud upon the plaintiff, and have reaped, and are still enjoying, its benefits.

It is strongly insisted by the counsel for defendants, and with much show of reason, that plaintiff had no right to rely upon the alleged false and fraudulent representations, because his means of knowing or ascertaining their truth or falsity were equal to those of the defendants, inasmuch as they concerned the character and contents of a written instrument then before him, which explained itself. If this were true, and plaintiff was not induced to forego an examination of the exhibit by any artifice or statement of the defendants, then undoubtedly an omission to make use of the means of information at command would furnish a complete answer to any claim for damages on his part. In its heading the exhibit purports to be a schedule or inventory of the entire "assets of the firm of Judd, Walker & Co., Marine, Minn., Sept. 1st, 1858," as well as its liabilities. This in itself was calculated to mislead and deceive.

The referee finds, as a fact, that it was prepared by defendants for that express purpose; that in answer to the particular enquiry whether it included the " St. Louis property " or " Judd & Leeds' assets," they positively and distinctly responded that it did.    Whether such an assurance was sufficient under the circumstances to put common prudence off its guard, and to excuse plaintiff from making further enquiry and investigation before acting upon it, was a question of fact, the right determination of which largely depended upon the relative situation, standing and intelligence of the respective parties, and their prior business relations and intercourse, as affecting the confidence which either would be likely to repose in the other—matters properly belonging to the referee to weigh and determine.    The exhibit itself is not an itemized statement of each particular credit, account, demand, and piece of property belonging to the company, but a general summary of its different kinds or classes of assets, such as " merchandise accounts," " bills receivable accounts," etc., the aggregate valuation of each, and footings showing the total amount of such assets and liabilities. To determine with any degree of certainty whether the copartnership interest in the St. Louis property was, in fact, included in any of these aggregate amounts required some familiarity with the books of account and business transactions of the company, a certain degree of skill and experience as an accountant, and particularly some knowledge of the real views and intentions of the party who made the exhibit, in respect to what might properly be embraced under either of its headings, and as to whether, in fact, he had so included therein the amount of this interest.    Whether this requisite knowledge and skill were possessed by the plaintiff in this instance was also a question of fact, to be determined from the whole evidence.    Upon an examination of the whole case we are not satisfied but that there was sufficient evidence to sustain the referee in the conclusion that a mere inspection of the exhibit by the plaintiff would

not have disclosed to him the desired information sought by his enquiry of defendants, and that their conduct effected a fraud by deceiving him as to the true character of the paper, and by inducing him to forego such further necessary investigation as he might, and probably would, have made but for their false representations.

On the trial plaintiff testified in his own behalf as to the making of the alleged representations, and to facts tending to show that he acted upon them in the belief that they were true. The following question was then put to him by his counsel, and allowed by the court, against defendants' objection: "Did you rely upon 'Exhibit A,' and the representations you have detailed in evidence, in arriving at the amount of your share, and in making the agreement you refer to?" To this he answered, "Yes." The ruling of the court upon this question is now alleged as error on the ground "that it called for the mental operations of the witness, and made him the arbiter in his own case."

Whether the plaintiff believed in the correctness of the exhibit as represented, and relied upon it and the truth of the representations, were material facts to be proved. They were matters peculiarly within the knowledge of the witness, and he was best able to testify truly in regard to them. The difficulty of contradicting such testimony, if false, and the consideration that it often, as in this case, enables a party to swear directly to the existence of a fact which the jury is called upon to determine, furnish very strong reasons why such evidence should be scrutinized with great care and caution, but do not affect the question of its competency. The better rule, in our judgment, and the one supported by the weight of modern authority, is this: Whenever the motive, belief, or intention of any person is a material fact to be proved under the issue on trial, it is competent to prove it by the direct testimony of such person, whether he happens to be a party to the action or not. *Edwards* v. *Currier*, 43 Me. 474; *Wheelden* v. *Wilson*, 44 Me. 11; *Watkins* v. *Wallace*, 19 Mich. 57; *Seymour* v. *Wilson*, 14 N. Y.

567; *Forbes* v. *Waller*, 25 N. Y. 430; *Thurston* v. *Cornell*, 38 N. Y. 281; *Cortland County* v. *Herkimer County*, 44 N. Y. 22. The expression to the contrary by a majority of the court in *Hathaway* v. *Brown*, 18 Minn. 414, was clearly *obiter*. The case of *People* v. *Saxton*, 22 N. Y. 309, cited by defendants in no way militates against this rule. There the material question was, not what the real intention of the voter was, but what was his intention as expressed by his ballot, and as interpreted by that alone, and upon that the case was decided.

One A. S. Parker, who was one of the members of the firm of Judd, Walker & Co., and participated in the proceedings connected with the settlement and dissolution, testified in behalf of plaintiff that during the negotiations between plaintiff and the defendants similar negotiations were being carried on between him and the defendants, and that he (witness) "was also about selling out, and making arrangements so to do;" that during such his negotiations, and, as he thinks, only a day prior to the time when plaintiff sold out, the said "Exhibit A was shown him by George B. Judd, in the presence of Walker," and also, as he thinks, Albert Judd, and that " they (George B. Judd and Walker) then told him that it was an exhibit of the liabilities and assets of the company." This testimony was also received under defendants' objection, and is now assigned as error.

The rule in regard to the admissibility of proof of contemporaneous transactions of a similar character, for the purpose of showing the intention of a party in a particular transaction, is fully considered and discussed by the court in *Jordan* v. *Osgood*, 109 Mass. 457, and is there well stated as follows (p. 461): " Another act of fraud is admissible to prove the fraud charged whenever there is evidence that the two are parts of one scheme or plan of fraud, committed in pursuance of a common purpose." Under this rule the testimony in question was clearly competent, as tending to prove a common purpose on the part of defendants to defraud both the plaintiff and witness by means of

the fraudulent use of this "Exhibit A," and the false representation that it contained a correct statement of the entire property of the firm. In fact, it was a part of the *res gestœ* of the settlement and dissolution of the firm that resulted in both Parker and plaintiff selling out and withdrawing from the partnership, and strongly tended to show the actual participation of all the defendants in the fraudulent transaction charged against them in this case.

The enquiries addressed to the plaintiff in regard to the time when he first learned of the existence of the conveyance to Greeley & Ludden, and the circumstances under which he obtained the knowledge, were properly allowed. The record of these deeds was only constructive notice of their existence and contents. The object of the enquiries was to show when actual notice was first received, as that was the time when the statute of limitations commenced to run.

Plaintiff's testimony, showing the extent of his examination of the yearly inventories of the Judd & Leeds assets and of the company's books of accounts, bore directly upon the question of his actual knowledge of the condition of the affairs of the company, and whether, in fact, he relied upon, or was deceived by, the alleged fraudulent representation—both material questions for the consideration of the referee.

What was meant by witness Leeds, in his deposition concerning the assets of Judd & Leeds, their nature, etc., was a matter solely for the consideration of the referee, uninfluenced by the opinion of any other witness as to his probable meaning, and hence the offer to explain any portion of his testimony by witness Wilkie was properly refused, and the same is true as to the sense in which Leeds used the words "petty ledger."

Regarding the other questions raised upon the rulings of the referee upon the admissibility of evidence, no error is discovered in any way affecting the merits of the controversy, or justifying a new trial.

As to the alleged defect of parties, defendants are the

sole, proper and necessary parties to a full and final adjudication of all matters and rights involved in this action. Parker having retired from the firm by the sale and transfer of all his interest therein to Walker and the two Judds, who succeeded to all his rights and obligations, it clearly was a matter of no concern to him how the partnership affairs were adjusted and settled as between them and the plaintiff, nor could he by any possibility be affected thereby. So far as he was concerned, the partnership was dissolved by his agreement with them, and its affairs settled and closed. Whether its assets were large or small in no way benefited or injured him. Neither has plaintiff any claim against him by reason of anything growing out of the partnership transactions, because he is concluded therefrom by his agreement with the remaining partners, the benefits and advantages of which it is the sole object of this action equitably to secure to him. To this end, and for this purpose alone, is an accounting asked or had, and no parties are in any way interested in it, or affected by it, except the parties in this action.

Upon the withdrawal of plaintiff and Parker from the firm, the two Judds and Walker, having by their purchases become possessed of its entire effects and assets, and succeeded to all its rights, liabilities and obligations, continued the partnership business in the same name, under the same articles of copartnership, and subject to its provisions and terms in all respects, save that each had a third interest in the reorganized firm. Under these circumstances no good reason is perceived why the personal representatives of Albert H. Judd, since deceased, should be joined as defendants herein. By the joint fraudulent act of all its members the new firm has become wrongfully possessed of property equitably belonging to plaintiff under his agreement with them, has knowingly converted the same to its own use and benefit, and should be held responsible therefor.

It is claimed by the defendants that the report is erroneous in so far as it is based upon the assumption that no

estate or interest was acquired by plaintiff, under the deed of September 24, 1858, in any of the lands covered by the deeds (Exhibits C and D) to Ludden & Greeley, because " (1) no title was passed by the last-mentioned conveyances, for the reason that the power of attorney under which Walker acted did not authorize him to convey lands acquired by the donors of the power after the power was made," and the lands in question were so subsequently acquired; and " (2) because the deed (Exhibit C) was not executed by Walker as his own individual act."

The language employed in the power of attorney to designate the property to which it was intended to relate is as follows : " All such lands, tenements, hereditaments and real estate whatever, either in the state of Wisconsin or situate in the territory of Wisconsin, to or in which we " (the said principals) " *are, or may be,* in any way entitled or interested," and " all such lands * * * and real estate *belonging to, or that may belong, to us.*" This clearly referred, not only to real estate then belonging to the principals, but to such as they might at any time thereafter acquire. In reference to the second point, it is recited in the body of the deed (Exhibit C) that it is an " indenture between Albert H. Judd " and others therein named as principals, " by their attorney in fact, Orange Walker, and Orange Walker, parties of the first part," and the said Greeley & Ludden of the second part. The deed purports to be signed and sealed by said first parties as follows : " In testimony whereof the said parties to these presents have hereunto * * * set their hands and seals," etc.

" ALBERT H. JUDD, [L. S.]
CAROLINE JUDD, [L. S.]
ASA PARKER, [L. S.]
GEO. B. JUDD, [L. S.] *By their attorney in fact.*
MARY ANN M. JUDD, [L. S.]
HIRAM BERKEY, [L. S.]
GEORGIANA E. WALKER, [L. S.]
ORANGE WALKER. [L. S.] "

As appears from the certificate of acknowledgment, Walker personally acknowledged the execution of said deed by himself as " his individual act and deed," and also as " his act and deed as attorney in fact as aforesaid," and " for and on behalf of the said Albert H. Judd," etc., " as their true and lawful attorney in fact." The name of Orange Walker subscribed to the deed is clearly indicated by its position and seal as his individual signature as one of the grantors, and not as an agent. So far as he is concerned as one of the parties of the first part to the indenture, it was properly and legally executed and acknowledged.

As respects the execution of a deed by an attorney in fact, although it is usual and better for him to sign the name of his principal, and to add thereto his own signature, with proper words indicating that the act is done by him as such attorney, yet it is not in all cases necessary that he should so append his own name. When the deed on its face purports to be the indenture of the principal, made by his attorney in fact therein designated by name, it may be properly executed by such attorney by his subscribing and affixing thereto the name and seal of his principal alone. *Devinney* v. *Reynolds*, 1 Watts & Serg. 328; *Forsyth* v. *Day*, 41 Me. 382. In this case the deed purports on its face to be the indenture of the principals, and not that of the agent. It fully discloses that it was made for them and in their name by their attorney in fact, Orange Walker, who had full authority so to do. Its execution was properly acknowledged by him as such attorney in fact, and for and on behalf of his said principals. The neglect to sign his own name to the words " by their attorney in fact" was a purely technical omission, devoid of any legal effect whatever.

Order affirmed.