WILLIAM HENSLIN AND ANOTHER v. E. C. WINGEN AND OTHERS.[1]

June 24, 1938.

No. 31,618.

[1]Reported in 280 N. W. 281.

*H. L. Cave* and *Leo J. Seifert*, for appellants.

*V. V. Lindgren* and *Putnam & Carlson*, for respondents.

PETERSON, JUSTICE.

Plaintiff sues to have it adjudged that he is the owner of 80 acres of land in Martin county by parol gift from his father, to bar adverse claims of defendants and quiet title in him. He says that the gift was made on his wedding day, September 21, 1913; that on September 26, 1913, he took possession, which he has retained ever since; that he has made extensive improvements as owner in reliance on the gift and has paid the taxes. Defendants. who are plaintiff's two brothers, three sisters, and the representative of the father's estate, deny the gift and allege that the father permitted plaintiff to occupy the land in consideration of his payment of the taxes, that the father continued to exercise ownership over the land and paid for the improvements and the taxes.

Plaintiff's evidence shows that he lived with and worked for his father, without compensation other than keep, until he was married and took possession of the farm on the dates mentioned. Plaintiff's father and the bride's father gave the young couple enough personal property to begin farm operations. Since taking possession, plaintiff has made improvements on the land consisting of a barn erected at a cost of $1,400, a well installed at an expense of $217, a chicken coop costing $100 and shingling the house, repairs to the basement, chimney, and steps, erection of a pump house and

outside toilet, planting of fruit trees, and repairs to fences, ditches, and other improvements in an aggregate amount in excess of $2,000, which he paid for out of his own funds. There was evidence that plaintiff's father declared before the marriage that he intended to give plaintiff the farm and after the marriage many times declared that he had given the farm to plaintiff and that the farm was plaintiff's. Defendants' evidence tended to show that the father gave plaintiff the money with which to pay for improvements and repairs; that the father paid most of the taxes, all of the receipts for which showed that the father paid them as owner and that the father continued to exercise ownership and control over the premises notwithstanding plaintiff's possession. The record title is still in the father. Plaintiff admits the tax receipts were all made out in the father's name, and accounts for this by the fact that the record title was in the father's name. He claims that he paid some of the taxes himself and that he reimbursed the father for the taxes paid by him.

A large part of the record consists of inadmissible evidence which the court below struck from the record and certifies that it did not consider in arriving at the decision. Fifty-three assignments of error are made, most of which are directed at the rulings with respect to such evidence.

■ The court excluded plaintiff's offer to explain why he stated, in the schedules in certain voluntary bankruptcy proceedings had by him, that, in consideration of rent of the land involved here, which was then occupied by him, he was indebted to his father for taxes on the premises in the sum of $99, which he promised to pay, and why he failed to list the farm as real estate owned by him. These statements in the bankruptcy proceedings were very persuasive with the court below. In a memorandum attached to the findings of fact and conclusions of law the court said that if the plaintiff's evidence could be believed it would justify a decision in his favor. As a reason why plaintiff's evidence could not be believed, the court stated:

"The fact that on filing a bankruptcy petition and schedules in 1927, he failed to list any real estate as being owned by him, and that in preparing schedule A-3 he listed a debt owing his father for rent of the very farm now in question, casts such reflection upon his present position that it cannot be explained away in the opinion of the court."

In effect, the court denied plaintiff an opportunity to make the explanation which might have made his testimony credible. Denial of plaintiff's offered explanation was error. The contradictory statement of a witness does not of itself conclusively prove that the facts are different than his testimony. It shows that the witness "has been of two minds on the subject." The inquiry is to determine which version is true. To this end, explanatory circumstances, if any, are received. 2 Wigmore, Evidence (2 ed.) § 1044. In State v. Reed, 62 Me. 129, 146, cited by the author, the court said as to a contradictory statement:

"* * * its force must depend very materially upon the circumstances under which it was made, and the influences at the time bearing upon the witness. It would therefore seem to be self-evident that witnesses so situated, should be permitted to make such explanation as might be in their power. The first impulse of the mind in such case, is to enquire how this happened; what reason can be given, and more especially what can the party implicated say in excuse or extenuation. To refuse the opportunity to explain, would be in effect to condemn a party without a hearing, and without that information, which in many cases, would be material to a correct judgment."

A party may always explain the circumstances under which inconsistent statements or claims were made and reconcile them with his testimony. He may explain the nature, circumstances, meaning, and reasons for the inconsistent statements. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 10351; Yale v. Edgerton, 14 Minn. 144 (194); Jaspers v. Lano, 17 Minn. 273 (296). He may show that the statements were made by his attorney in the preparation of pleadings

or other papers. In this connection he may show that the attorney acted without authority or that he did not correctly state the matter. Tri-State Transfer Co. v. Nowotny, 198 Minn. 537, 270 N. W. 684; 1 R. C. L. p. 500, § 40, notes 14-16; 2 Wigmore, Evidence (2 ed.) § 1044. In Trebesch v. Trebesch, 130 Minn. 368, 372, 153 N. W. 754, a case much like the instant one, we held that the taking of a written lease of premises by one in possession claiming title to the land by gift was "an admission contradictory to the claim of title" asserted by him and was subject to explanation. In Drager v. Seegert, 138 Minn. 6, 163 N. W. 756, we held that the signing of a written lease by one claiming a farm as a gift was not conclusive and was subject to explanation, and that the force and effect of the lease and the merits of the explanation were fact questions for the jury.

■ Plaintiff offered to show that he made the improvements and repairs on the farm in reliance on the parol gift of the land. Where the motive, belief, or intention with which an act is done is material, a party may show the fact directly by his own testimony. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3231; Fontaine v. Bush, 40 Minn. 141, 41 N. W. 465, 12 A. S. R. 722; Hoyt v. Duluth & I. R. R. Co. 103 Minn. 396, 115 N. W. 263; Clark v. Marvin, 140 Minn. 285, 167 N. W. 1029; Johnson v. Holmes, 142 Minn. 54, 170 N. W. 709. See Seigneuret v. Fahey, 27 Minn. 60, 6 N. W. 403; Ganser v. Fireman's Fund Ins. Co. 38 Minn. 74, 35 N. W. 584; Garrett v. Mannheimer, 24 Minn. 193. Plaintiff's offer of evidence that he made the improvements in reliance upon the parol gift of the land to him by his father comes within the rule. It showed his belief and intention in making the improvements. In Trebesch v. Trebesch, *supra,* we held that to constitute a valid transfer of land by verbal gift there must be a gift completely executed by delivery of possession and performance of some acts sufficient to take the case out of the statute of frauds; that the performance necessary for this purpose must be an acceptance, a taking of possession under and in reliance upon the gift, and the doing of such acts in reliance thereon that it would work a substantial injustice to hold the gift void. Plaintiff had the right to testify directly to the fact that he made the

repairs in reliance upon the gift. In Berkey v. Judd, 22 Minn. 287, the question was whether a party believed in the correctness of an exhibit as represented, and relied upon it and the truth of certain representations. We held that such matters were peculiarly within the knowledge of the witness, that he was best able to testify in regard to them, and that the difficulty of contradicting such testimony as false did not affect its competency. We said [22 Minn. 297]:

"The better rule, in our judgment, and the one supported by the weight of modern authority, is this: Whenever the motive, belief, or intention of any person is a material fact to be proved under the issue on trial, it is competent to prove it by the direct testimony of such person, whether he happens to be a party to the action or not."

In Timmerman v. Whiting, 118 Minn. 398, 137 N. W. 9, we held that the only way such reliance can be proved, outside of the inference from the party's acts, is to permit him to state under oath that he did rely on the representations. In Grout v. Stewart, 96 Minn. 230, 104 N. W. 966, a party was permitted to testify that in executing and delivering a deed to the defendant it was his intention to carry out the provisions of a contract. It was error to exclude the testimony.

Since there must be a reversal, it is not necessary to consider the other assignments of error. On a retrial evidence which was stricken as inadmissible will not be received again. In that situation, a discussion of the questions presented would serve no useful purpose.

Reversed and new trial granted.