### ROY AIDE v. PROSPER TAYLOR.[1]

January 22, 1943.

No. 33,307.

[1]Reported in 7 N. W. (2d) 757.

*Grannis & Grannis,* for appellant.
*Weyl & Weyl,* for respondent.

PETERSON, JUSTICE.

Plaintiff had a verdict for personal injuries. After denial of his motion for judgment notwithstanding the verdict, defendant appealed from the judgment.

Plaintiff was employed as an attendant in a filling station on the west side of Concord street, which extends north and south in South St. Paul. At each end of the filling station a driveway enters from the street. The street is about 45 feet wide with double streetcar tracks down the center and with paved roadways about 15 feet wide on either side. The station and the street were brightly illuminated.

Early in the morning of February 25, 1941, while in the street in front of the filling station, plaintiff was struck by defendant's automobile. Except for the illumination furnished by the station and street lights, it was dark at the time. Defendant, a police officer of South St. Paul, and one Mazar, another officer, were going northerly at a speed of about 25 miles per hour to answer a police call.

Plaintiff's version is that he was struck as he stepped around the front and to the side of a tractor-trailer trucking unit, parked facing south on the west side of the street adjacent to the curb between the driveways from the street at the filling station, to enter the cab from the street side to turn off the motor, which he kept running for alternate half-hour periods because it was cold. "As" he "came out into the street" plaintiff looked to the north for southbound vehicles but saw none. He did not look to the south, the direction from which defendant was approaching. There was no evidence to show where defendant's car was when plaintiff looked. If he had looked south, he could "easily" have seen defendant's car. When plaintiff stepped about three feet into the street beyond the tractor, defendant's automobile hit him, causing severe personal injuries.

Defendant's version is entirely different. He claims that he was proceeding on the east side of the street astride the easternmost streetcar rail; that there were some trucks parked on the east side of the street opposite the filling station; that plaintiff suddenly ran into the street from in front of a truck parked there to cross to the filling station; that he first saw plaintiff about ten feet ahead in front of his car; that defendant swerved to the right to avoid hitting him, but without success, and that after the accident he had plaintiff taken to a hospital.

Both parties relied in part on surrounding facts and circumstances to bolster their claims. Plaintiff showed that a screwdriver and a pair of pliers which he had in his hand when hit were found at about the place where he claims he was struck; that his right leg was broken and bore marks from the bumper of defendant's car; and that immediately after the accident defendant was leaning over plaintiff near the tractor-trailer on the west side of the street.

Defendant and Mazar testified that it was customary to park trucks serviced at the filling station on the east side of the street and that some trucks were there at the time of the accident. Further, defendant produced a statement taken, so we were in-

formed on the argument, at the hospital at about 10:30 in the morning of the accident to the effect that when plaintiff was hit he was returning to the filling station from a parking lot on the east side of the street owned by his employer and used for parking serviced trucks; that without looking to his left, that is, to the south, plaintiff started to run from in front of a truck parked on the east side of the street westerly across the street toward the filling station; that while crossing the street he was struck, but that he did not know exactly where; that plaintiff did not know in which direction the car which hit him was going; and that he did not know whether it had its headlights on. The statement is substantially the same as defendant's version of the accident.

Plaintiff countered with a frontal attack on the statement that it lacked all probative value. There was medical testimony to show that at the time it was procured plaintiff was unable to give a voluntary statement because he was then suffering much pain from his injuries and because he had had "several hypos of morphine" and was "still semi-conscious." He categorically denied any recollection of having made the statement. When interrogated, he asserted that the facts were not as set forth in the statement but, on the contrary, as he had testified.

Further, a coemploye of plaintiff testified that there were no trucks parked across the street from the filling station at the time of the accident. Plaintiff testified that some trucks were so parked. He also testified that in a conversation some months after the accident Mazar stated that he did not see plaintiff until he was on the left front fender of defendant's car.

On the trial defendant contended that plaintiff was guilty of contributory negligence as a matter of law for failure to look for vehicles approaching from the south before he entered the street. The court instructed the jury that, if plaintiff was struck while crossing the street as claimed by defendant, he was guilty of contributory negligence as a matter of law for failure to look to his left for approaching vehicles; but that if plaintiff was injured as he claimed, the issues of negligence and contributory negligence

should be determined under instructions which, except for defendant's claim that he was entitled to a directed verdict, stand unchallenged.

Implicit in the verdict is a finding in accordance with plaintiff's version that the accident occurred on the west side of the street while plaintiff was going around the truck to turn off the motor. Here, as below, defendant challenges the verdict (1) as opposed to what he claims is the uncontradicted and unimpeached testimony of himself and Mazar, which he claims must be accepted as true under the rule of O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430; and (2) as contrary to law upon the ground that in any view of the evidence plaintiff was guilty of contributory negligence as a matter of law for failure to look to the south for approaching traffic, which would have been plainly visible to him had he looked.

■ This is not a case where defendant's claims are supported by uncontradicted and unimpeached testimony, but one rather where the evidence, both direct and circumstantial, with respect to the claims of the parties, is in conflict and where there is testimony to impeach witnesses for both parties.

The evidence as to the precise place where plaintiff was when he was struck is in direct conflict. Defendant and his witness, Mazar, testified that it was on the east side of the street. There was direct testimony by plaintiff, either entirely overlooked or ignored in the argument that defendant's evidence was uncontradicted, that, when he was hit, plaintiff was about three feet from the front of the tractor and about three feet from the westernmost streetcar rail. Although opposed by the testimony of defendant and Mazar, plaintiff's testimony alone is sufficient to sustain a finding supporting his version. In Benson v. Northland Transp. Co. 200 Minn. 445, 450, 274 N. W. 532, 534, we held, quoting 4 Wigmore, Evidence (2 ed.) p. 309, § 2034: "In general, the testimony of a single witness [the plaintiff], no matter what the issue or who the person, may legally suffice as evidence upon which the jury may found a verdict."

Plaintiff's testimony cannot be rejected simply because at the hospital he gave the statement containing a contrary version. A statement is an admission of facts therein asserted. An admission, if believed by the trier of fact, is substantive evidence of the facts to which it relates. Litman v. Peper, 214 Minn. 127, 7 N. W. (2d) 334; Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451. But the jury was not bound to believe the statement. A party's extrajudicial admissions, absent an estoppel to deny their truth, as here, are not conclusive against him and may be explained, limited, qualified, and contradicted. In determining whether a party's testimony or his prior contradictory admissions are true, the trier of fact may reject the admissions where the testimony is entitled to greater weight. A contradictory admission shows that the party has been of two minds on the subject. It raises such questions as which version, his prior statement or his testimony, is true, and how did it happen that at a prior time he gave a version opposed to his testimony? These questions can be answered only by inquiry to ascertain which version is true and to explain the contradiction. "A party may always explain the circumstances under which inconsistent statements or claims were made and reconcile them with his testimony." Henslin v. Wingen, 203 Minn. 166, 169, 280 N. W. 281, 282. See 2 Dunnell, Dig. & Supp. § 3429. The jury as the trier of fact should consider all matters that affect the weight of evidence. Where there is evidence to show that a party making an admission was at the time in such a mental or physical condition, due to pain caused by physical injury or to the administration of drugs interfering with the free use of his mental faculties, as not to be able to recollect and to voluntarily state the facts, the probative value and weight of the admission is for the trier of fact. Burnett v. People, 204 Ill. 208, 68 N. E. 505, 66 L. R. A. 304, 98 A. S. R. 206; State v. Webb, 216 Mo. 378, 155 S. W. 998, 20 L.R.A.(N.S.) 1142, 129 A. S. R. 518, 16 Ann. Cas. 518. If it conclusively appears that the party was incapacitated from making a rational admission, as where he was at the time in a coma, the question becomes one of

admissibility, and the statement should be ruled out entirely. Ikenberry v. New York L. Ins. Co. 127 Minn. 215, 149 N. W. 292. *Cf.* State v. Grear, 28 Minn. 426, 10 N. W. 472, 41 Am. R. 296, holding that, where a confession is obtained from an accused person while intoxicated, it should be entirely excluded if the intoxication amounts to a mania; otherwise its weight is for the jury. Plaintiff's statement was not conclusive against him; its weight was for the jury, which was entirely within its province in rejecting it.

The circumstantial evidence, if believed, substantially contradicted defendant's version and supported that of plaintiff. For present purposes it is not necessary exhaustively to analyze the evidence; reference to a few items will suffice. The testimony that the screwdriver and pliers which plaintiff had in his hand when he was hit were found after the accident substantially where the plaintiff claimed the accident occurred tended to support his claim that he was hit on the west side of the street, and to contradict that of defendant that the accident occurred on the east side. The fracture of plaintiff's right leg with bruises and marks thereon about where the bumper of defendant's car would be likely to come in contact with it permitted the inference that plaintiff was hit, as he claimed, while facing east with his right side exposed to defendant's oncoming car, and not, as defendant claimed, while he was facing west with his left side toward the car.

There was also impeachment of defendant's witness Mazar by his statement a few months after the accident that he first saw plaintiff, not, as he testified, when plaintiff was crossing from the east to the west side of the street ten feet in front of defendant's car, but when he was on the left front fender after he had been hit. The impeachment tended to show that Mazar's testimony with respect to the place as well as to the other particulars of the accident was not true.

Because the evidence was in conflict and there was evidence to impeach witnesses on both sides, the fact issues were for the jury,

and the rule of O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, *supra,* did not apply.

No claim was made here by plaintiff, although the question seems to have been raised by him below, that the statement, because it was procured on the day of the accident, was fraudulent under Minn. St. 1941, § 602.01 (Mason St. 1940 Supp. § 5687-8), as having been secured from an injured party within 30 days after his injuries were sustained. What we have said is independent of and without reference to any question whether the statement in question was fraudulent under the statute.

■ The question of plaintiff's contributory negligence should be considered on the basis of the jury's finding that plaintiff's version of the accident was true. In that view, the question is simply whether plaintiff was guilty of contributory negligence as a matter of law for failure to look to his right before stepping around in front of and a few feet beyond the tractor. The evidence is not precise as to where plaintiff and defendant's car were when he looked. The testimony that plaintiff looked to the north "as" he "came out into the street" is indefinite as to whether he was then about to enter the street from the filling station property or to enter upon the paved portion for vehicular traffic. If the former, plaintiff had to walk approximately 25 feet from the point where he looked to that where he was hit, and, if the latter, about 15 or 20 feet. In either event, defendant's car was then some substantial distance away.

The place where plaintiff claims he was hit was about 10 to 12 feet from the center of the street. If there were trucks parked on the east side, defendant had about 14 or 15 feet on that side in which to drive, and, if there were no trucks parked there, about 22 or 23 feet. In either event, plaintiff was in no peril from automobiles on the east side of the street.

Contributory negligence, like negligence, is the failure to exercise due care to guard against harm reasonably foreseen or anticipated. Here, plaintiff had no actual knowledge that defendant was driving on the west side of the street, nor of the peril to

which such driving exposed him. To hold plaintiff guilty of contributory negligence, it would be necessary to impute to him as a matter of law knowledge that defendant was driving on the wrong side of the street upon the hypothesis that it was plaintiff's duty to look to his right as well as to his left or, in lieu thereof, be charged with the knowledge which looking would have afforded him. Such is not the law. The roadway being of sufficient width, it was defendant's duty to keep upon the right half. Minn. St. 1941, § 169.18, subd. 1 (Mason St. 1940 Supp. § 2720-182). Ordinarily, a person may assume that another will obey the law and perform his duty. A pedestrian is not guilty of contributory negligence as a matter of law for failure to look for an automobile approaching on the wrong side of the street, because ordinarily he has no reason to foresee or to anticipate danger from that direction. Peterson v. Miller, 182 Minn. 532, 235 N. W. 15; Powell Bros. Truck Lines v. Piatt (10 Cir.) 92 F. (2d) 879; Harris v. Johnson, 174 Cal. 55, 161 P. 1155, L. R. A. 1917C, 477, Ann. Cas. 1918E, 560; Azzaro v. O'Connell, 121 Cal. App. 617, 9 P. (2d) 345; Turner v. George Rushton Baking Co. 135 Kan. 484, 11 P. (2d) 746; Fisher v. Finan, 163 Md. 418, 163 A. 828; Dreyfus v. Daronco, 253 Mich. 235, 234 N. W. 587. Under the circumstances, plaintiff's contributory negligence was a fact issue. It was properly submitted to the jury.

Affirmed.