FRED M. KELLETT AND ANOTHER v. NICK WASNIE
AND ANOTHER.

112 N. W. (2d) 820.

January 12, 1962—No. 38,163.

*Rosengren, Rufer, Blatti & Hefte, Robert O. Blatti,* and *Richard L. Pemberton,* for appellants.

*Nolan, Alderman & Holden* and *M. Eleanor Nolan,* for respondents.

NELSON, JUSTICE.

This is an appeal from an order denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial.

Two suits were consolidated for trial. Both were brought by Fred M. Kellett, one as guardian ad litem on behalf of his minor daughter, Carolyn N. Kellett, to recover for injuries arising out of an automobile accident, and one in his own behalf to recover for necessary expenses incurred and for loss of her services. Defendants in both actions were

Nick Wasnie, owner of the automobile involved, and Suzanne Wasnie, his daughter. Plaintiffs allege that Suzanne was the driver of the automobile at the time of the accident and defendants claim Carolyn was driving. The jury returned a verdict in favor of Carolyn for $5,200 and one in favor of her father for $4,000.

The basic facts, many of which are not in dispute, may be related as follows: On March 25, 1959, at approximately 3:40 p. m., Suzanne Wasnie and Carolyn Kellett were involved in an accident on the Whipple Lake road, west of Brainerd. Both girls were minors, their ages being 16 and 15 years respectively. They were childhood friends who had gone riding together on numerous occasions in the automobile owned by Suzanne's father. It is undisputed that Suzanne had obtained permission from her father to use the car that afternoon. Carolyn had not yet learned to drive but had secured a permit in the expectation of learning. A witness, Mrs. Alma Miller, testified that she saw the girls in the automobile at 3:15 p. m. and that Suzanne was driving. Another witness, Gerard Schwagerl, observed the girls in the automobile shortly before the accident occurred, as they passed him going west from Brainerd. Suzanne and Carolyn were going east on the Whipple Lake road when the car left the road and struck a tree. Carolyn sustained a broken left leg, lacerations of both knees, and a concussion caused by her head striking some part of the interior of the car. Suzanne's injuries consisted of a cut chin, gashes on the back of her head, a bruised shoulder, and a sore leg. Both were taken to the hospital in Brainerd for treatment. As a result of the impact of the accident both girls were rendered incoherent. Carolyn suffered total amnesia which even up to the time of trial made her unable to remember the immediate circumstances surrounding the collision. Suzanne testified that shortly after the accident and before being released from the hospital she began to recall certain incidents related to the accident, and it appears that at the time of the trial she was sufficiently recovered to relate a succession of events which had culminated in the car striking a tree. She contends that they drove to Whipple Lake and that upon their turning back Carolyn asked permission to drive, which she granted. Suzanne says that she stopped the car and walked around to the other side and that Carolyn slid into the driver's seat; that due to

Carolyn's unfamiliarity with the car she had trouble with the clutch before she finally got the car started. According to Suzanne, Carolyn was "driving along not very fast, but she was doing pretty good" when she came to a turn which she failed to negotiate and the car went across the road and struck a tree.

The first person to arrive at the scene of the accident was Roy Johnson who lived about 600 feet from where the accident took place. On his arrival he noticed that Carolyn was sitting in the front seat directly behind the wheel and Suzanne was lying in the rear seat. His son, LeRoy Johnson, also came to the scene of the accident, and he testified substantially as did his father with regard to the position of the girls. LeRoy Johnson called the Crow Wing County sheriff's office. Charles Warnberg, chief deputy sheriff, and Robert Hartwig, an employee in the sheriff's office, arrived shortly thereafter. Warnberg's testimony with reference to the position of the girls was the same as that of the Johnsons. He testified that the steering wheel was bent; that the windshield was shattered from the approximate center toward the right side; and that there was a dent in the dashboard to the right of the steering wheel. The bow of Carolyn's glasses was found on the right side of the front seat on the floor.

We have no difficulty after reading the record in concluding that the court properly instructed the jury regarding circumstantial evidence. As the record now stands, the evidence appears to be sufficient to support the jury's verdicts.

Two issues have been raised by defendants' assignments of error: (1) Are remarks in the closing argument of plaintiffs' counsel without basis in the record and as such prejudicial as a matter of law on the facts of this case? (2) Is a charge to the jury which includes matter without basis in the record and excludes matter reasonably raised by the record, and duly requested to be included, prejudicial as a matter of law on the facts of this case?

The crucial question raised by the contentions of the defendants is whether the trial court committed reversible error when it excluded certain testimony on the part of defendant Nick Wasnie offered to explain an apparent admission by him to Carolyn's mother and thus to avoid the possibility of erroneous inferences being drawn by the

jury from the evidence as it stood. The so-called admission occurred in a conversation between Wasnie and Mrs. Kellett at the hospital a few hours after the accident. She testified:

"Q. You had a conversation with Mr. Wasnie, and in response to that he told you something. What did he tell you?

"A. He told me that at first he was convinced his daughter was driving but that she had recalled she was not driving, so there wasn't anything else he could say."

Obviously, this remark could have given the impression that at the time Mr. Wasnie did not believe his daughter's later version of the accident. In order to rebut this implication defendants' counsel attempted on direct examination to establish Wasnie's state of mind at the time of the conversation. Such attempt was frustrated by objections made by plaintiffs' counsel and sustained by the court. Defendants contend that the plaintiffs opened the door to any pertinent inquiry on this subject by asking Mrs. Kellett for the conversation she had with Wasnie at the hospital. The inquiry as to Wasnie's state of mind was pertinent and if admitted by the trial court would have qualified and explained his early conversation with Mrs. Kellett and would have shown his state of mind at the time he made the admission.

On direct examination, Wasnie testified as follows:

"Q. All this time you did not know anything about the accident itself?

"A. No.

"Q. Or who was driving?

"A. I took for granted Suzanne was driving.

"Q. You took that for granted and assumed that for some time?

"A. Yes, that's right.

"Q. Until when?

"A. Until I found out different.

"Miss Nolan [plaintiffs' counsel]: I move that be stricken as not responsive.

"The Court: Sustained, and the jury is instructed to disregard it.

"Q. Did you find out any information to the contrary of that?

"Miss Nolan: I object to that as improper.

"The Court: Sustained.

"Q. Well, before you knew anything about it you assumed your daughter had been driving?

"A. That is right.

"Q. Did that assumption change at some time?

"A. It did later.

"Q. Did you have a conversation with Mrs. Kellett at some time after the accident?

"A. The night we went to the hospital I felt sorry for the girl, and I thought my insurance on the car covered the whole thing.

"Q. What was your assumption there as to who was driving?

"Miss Nolan: Just a moment. I think that is improper as to what his assumption was.

"The Court: Objection sustained."

At this point the trial court recessed and discussed the question of the admissibility of this evidence with counsel in chambers. We quote this discussion in part:

"Mr. Blatti [defendants' counsel]: Your Honor, I offer to prove through this witness that when he talked to Mrs. Kellett about who was driving the vehicle he simply assumed from the fact his daughter had asked permission for the car that she was driving, and that that was his state of mind at that time.

"The Court: I think the assumption of a witness is for the jury. It invades the province of the jury. You cannot say I assume something to be true. Why do you say it has any bearing on this case?

\* \* \* \* \*

"Mr. Blatti: Then it is fair for me to ask him at the time he had his conversation with Mrs. Kellett he had not made any investigation himself as to what had actually taken place?

\* \* \* \* \*

"Mr. Blatti: Then I offer to prove that he had not and that he assumed by the fact I stated that she took the car, and that after that he did not.

"The Court: Well, I still say assumptions are out. I will overrule the objection to that one question.

"Mr. Blatti: That at the time he talked to Mrs. Kellett he had not made an investigation, or had he made an investigation.

"The Court: Had he at the time he talked to Mrs. Kellett made any investigation. I think that covers it.

"Mr. Blatti: How about did he have any conversation with Mrs. Kellett after he had made an investigation?

"Miss Nolan: No, I think the question is did he later have a conversation with Mrs. Kellett. There again you are putting in indirectly what you cannot put in otherwise.

"Mr. Blatti: I am not telling what the investigation was. I am offering to prove that this man made the statement without having made an investigation.

"The Court: I will sustain any objection as to assumption. If you ask that one question it is all right.

\* \* \* \* \*

"Mr. Blatti: Then I will withdraw my first question as to whether he made an investigation at the time he first talked with Mrs. Kellett, because it is incomplete without my asking the second question."

It is apparent that his counsel was attempting to provide Suzanne's father the opportunity to make the simple statement that this early conversation occurred in the context of his having given his daughter the car, having seen her drive off in it, and having next heard that she had been in an accident. Such conversation would no doubt contain expressions of his logical assumption that Suzanne was driving. Counsel next sought to establish that this early conversation occurred before Suzanne's father made further investigation revealing facts which changed his state of mind on that issue. This was prevented by the rulings of the court.

It is conceded that in reviewing the reception of testimony at a trial we are governed to a large extent by the rule that much is left to the sound discretion of the trial judge. The ruling of the trial court will not become reversible error unless it is shown that there was a clear abuse of discretion or that the ruling was arbitrary.

This court in Katlaba v. Pfeifer, 238 Minn. 298, 303, 56 N. W. (2d) 725, 728, said:

"\* \* \* The discretionary function of the trial judge in determining whether evidence offered has enough probative value to outweigh the risk of its reception is not to be restricted by technical exclusionary rules which defeat consideration and weighing by the jury of all relevant facts."

It is not within this court's province to set aside a verdict supported by the evidence and approved by the trial court unless the record discloses prejudicial error.

In Henslin v. Wingen, 203 Minn. 166, 280 N. W. 281, the trial court in effect denied the plaintiff an opportunity to make certain explanations which might have made his testimony credible. It excluded plaintiff's offer to explain why he stated in the schedules in certain voluntary bankruptcy proceedings that in consideration of the rent of the land involved in the action, which was then occupied by him, he was indebted to his father for taxes on the premises in the sum of $99 which he promised to pay, and why he failed to list the farm as real estate owned by him. This court held in that case that the denial by the trial court of plaintiff's offered explanation was error and said that the contradictory statement of a witness does not of itself conclusively prove that the facts are different from his testimony. We said that it shows the witness (203 Minn. 169, 280 N. W. 282) "has been of two minds on the subject," that the inquiry is to determine which version is true, and that to this end explanatory circumstances, if any, are received.

Wigmore in speaking of contradictory statements says that such a statement indicates on its face that the witness has been of two minds on the subject, and therefore there has been some defect of intelligence, honesty, or impartiality on his part; that it is conceivable that the inconsistency of the statements themselves may turn out to be superficial only or that the error may have been based not on dishonesty or poor memory but upon a temporary misunderstanding. He takes the position, therefore, that it is both logical and just that the explanatory circumstances, if any, should be received. 3 Wigmore, Evidence (3 ed.) § 1044. This author also points out that the impeaching force of an apparently inconsistent statement of a witness lies

in the self-contradictory state of mind which it discloses and therefore his credibility may be restored by showing that there was no inconsistency; that this explanation may be made by showing that words were used in a sense different from that claimed by the opponent, or that a different state of facts was in mind at the time of the utterance; and that under such circumstances the opinion rule should not interpose any bar. 7 Id. § 1972.

See 31 C. J. S., Evidence, § 380, where the following statement may be found:

"The party against whom an alleged admission is shown may introduce evidence to explain or rebut the statement and thus diminish its weight as an admission, or even contradict or prove the falsity thereof, whether written or oral."

The rule seems to be well established in this state that a witness may always explain the circumstances under which inconsistent statements were made and reconcile them with his testimony. He may explain the inconsistent statements—their nature, circumstances, and meaning, and the reasons for them. 20 Dunnell, Dig. (3 ed.) § 10351; Yale v. Edgerton, 14 Minn. 144 (194); Jaspers v. Lano, 17 Minn. 273 (296).

In this connection prior statements of a witness which are inconsistent with his present testimony are admissible for impeachment purposes even though they state what the witness understood and not the facts on which the understanding was based. Uggen v. Bazille & Partridge, 123 Minn. 97, 143 N. W. 112; Bird v. Johnson, 199 Minn. 252, 272 N. W. 168.

In the Bird case, certain evidence was received to impeach one of plaintiff's witnesses, Mr. Rudolph. Rudolph testified that while he was riding with defendant, the defendant told him that he did not see the plaintiff until he hit him. Defendant, a deputy sheriff, and a constable all testified that Rudolph had said after the accident that defendant was not to blame and could not have avoided the accident. Plaintiff himself introduced in evidence a report from the sheriff's office containing a statement by Rudolph that the accident was not

the defendant's fault. It was held that under such circumstances the error, if any, was cured.

In the instant case plaintiff opened the door to the inquiry defendants sought to make concerning Wasnie's state of mind by first eliciting from Carolyn's mother the declaration that Wasnie thought his daughter was driving his car at the time of the accident. His understanding at the time could not be established by cross-examination of Mrs. Kellett; if an explanation was in order, it could only be offered by him. Any other attempt to explain what might well have been a prejudicial admission would, of course, have been met with the objection that it was hearsay. It therefore becomes evident that the witness should have been able to show the extenuating circumstances under which his statement had been made. Without an explanation, the jury could only infer that his state of mind was based on facts which only he knew and which he was unwilling to disclose. Although the Minnesota cases touching on this subject have not dealt with the identical problem presented here, yet many represent this court's attitude under similar fact situations. For instance, in Aide v. Taylor, 214 Minn. 212, 217, 7 N. W. (2d) 757, 759, 145 A. L. R. 530, 534, this court said:

"* * * A party's extrajudicial admissions, absent an estoppel to deny their truth, as here, are not conclusive against him and may be explained, limited, qualified, and contradicted. In determining whether a party's testimony or his prior contradictory admissions are true, the trier of fact may reject the admissions where the testimony is entitled to greater weight. A contradictory admission shows that the party has been of two minds on the subject. It raises such questions as which version, his prior statement or his testimony, is true, and how did it happen that at a prior time he gave a version opposed to his testimony? These questions can be answered only by inquiry to ascertain which version is true and to explain the contradiction."

A similar rule was applied in Fieve v. Emmeck, 248 Minn. 122, 78 N. W. (2d) 343. There one of the defendants on cross-examination under Rule 43.02 of the Rules of Civil Procedure testified that he had

made no statement or report concerning the accident. Evidence that he had made written statements was introduced, and testimony that the witness had made a settlement of his claim against the other defendant arising out of the accident was then admitted to explain the circumstances under which the statements had been given. This court in an opinion by Mr. Chief Justice Dell said (248 Minn. 131, 78 N. W. [2d] 349):

"* * * Moreover while testimony relating to the settlement was not admissible as evidence of an admission of liability by [defendant] Gottwald, it was relevant and was properly admitted for the limited purpose of explaining the circumstances under which the statement was given."

In Lovejoy v. Minneapolis-Moline Power Implement Co. 248 Minn. 319, 79 N. W. (2d) 688, we held that it was reversible error to exclude explanatory testimony of an expert witness where at the time of rendering an opinion in a letter he was laboring under a misapprehension of the true facts and subsequently when called to testify he expressed a different opinion because he had learned further facts. The foregoing case presents marked similarity to the instant case since in both cases the witnesses were attempting to show that they were not fully informed when they rendered their first statement or opinion.

This court in a criminal case, presenting an analogous question, State v. Kiewel, 173 Minn. 473, 217 N. W. 598, held that after the state in a prosecution for embezzlement had proved settlement by the accused of civil suits brought to recover alleged shortages, it was error to exclude proof that the defendant had asserted at the time of making the settlements that he had not misappropriated funds. We said there:

"* * * When the inculpatory part of a transaction is proved as an admission, defendant has the right to prove the exculpatory part of the same transaction."

Of course, it is true that the erroneous exclusion of testimony does not justify a new trial unless its admission might have resulted in a different verdict. Nelson v. Farrish, 143 Minn. 368, 173 N. W. 715. On the other hand, where the case is close, the inclusion or exclusion

of material testimony is important in balancing the respective positions of the parties. The evidence adduced at the trial in the instant case was sharply conflicting, with each side offering evidence which, if believed by the jury, might have influenced the outcome. All admissible evidence ought to be received in order that the triers of fact may determine the outcome in justice to both sides as nearly as can be. Without the admission of Wasnie's explanatory evidence in the instant case, defendants might well complain that they did not have a fair trial. Where the case is close on the facts the rejection of competent and material evidence is reversible error. See, Taylor v. Northern States Power Co. 192 Minn. 415, 256 N. W. 674. See, also, Svensson v. Lindgren, 124 Minn. 386, 145 N. W. 116, Ann. Cas. 1915B, 734; Thaden v. Bagan, 139 Minn. 46, 165 N. W. 864.

We think it is clear that reversible error was committed in not allowing Wasnie to testify with reference to certain facts which would have explained why he had been of two minds regarding who was the driver of his car when the accident occurred. To refuse to permit a witness who has given contradictory statements to explain in effect condemns him without a hearing and without that information which would be material to a correct judgment. State v. Reed, 62 Me. 129. For this reason alone a new trial must be granted although it does appear that certain remarks of plaintiffs' counsel in closing argument concerning the testimony as to Wasnie's statement may well have been prejudicial and may have aggravated the effect of refusing to admit his explanatory testimony.

Having concluded that a new trial is necessary on the grounds that the refusal to admit such explanatory testimony offered by Wasnie was reversible error, we refrain from discussing other issues raised on this appeal.

Reversed and new trial granted.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.