**Marilyn M. GUM, et al., Respondents,**

v.

**MEDCALF ORTHOPAEDIC APPLIANCE CO.,**
**Appellant.**

**No. C8–85–1237.**

Court of Appeals of Minnesota.

Feb. 11, 1986.

Gerard C. Magee, Minneapolis, for respondents.

Gerald M. Nolting, Faegre & Benson, Minneapolis, for appellant.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This matter originally came on for jury trial on October 30, 1984 in Hennepin County District Court. The jury returned a verdict finding Medcalf Orthopaedic Appliance Company (Medcalf Orthopaedic) negligent and awarding damages of $170,000 to Marilyn Gum and $69,000 to her spouse Harry Gum, attributing 10 percent of the total amount of negligence to Marilyn Gum. The trial judge granted Medcalf Orthopaedic's motion for a new trial on all issues.

The present case came on for a second jury trial on April 15, 1985. During the trial, the judge denied Medcalf Orthopaedic's two mistrial motions and its motion for directed verdict. The jury answered special verdict questions, finding that Medcalf Orthopaedic was negligent in connection with the service and repair of Marilyn Gum's leg brace and that such negligence directly caused her injury. The jury awarded damages of $240,000 for her and $75,000 for Harry Gum. The trial judge denied appellant's post-trial motion for judgment notwithstanding the verdict (JNOV) or in the alternative for a new trial and entered judgment on June 19, 1985. We affirm.

## FACTS

Respondent was afflicted with polio in 1954. As a result, her left arm is weak and her right leg is paralyzed, requiring the use of a full leg brace or a wheelchair. On the morning of August 29, Marilyn Gum went to appellant to have the lock on her leg brace repaired. She explained the problems with the brace to Hugh Coyle, a long time employee and present owner of appellant. Coyle returned with the brace, but the brace still was not locking properly. While still at Medcalf Orthopaedic, Marilyn Gum informed Harvey Medcalf, a consultant and former owner of appellant, of the problem, and he took the brace into the shop to extend it. Marilyn Gum tried the brace on again and believed that it locked. She then walked to her car and drove to the Silver Lake Clinic to see her doctor. She testified that she locked her brace when she left her car, and that she walked to the clinic. After spending approximately fifteen minutes in the clinic, Marilyn Gum walked out of the clinic towards her car and felt her foot spring forward and the brace unlock.

After she was treated at the clinic, Marilyn Gum telephoned Medcalf Orthopaedic and spoke to Harvey Medcalf about the accident. She testified that Harvey Medcalf responded as follows:

I'm sorry, I'm not responsible for your accident. I may have extended it too far. Take it to the nearest brace shop and I'll pay the bill.

The following day, Marilyn Gum was informed by Silver Lake Clinic that she had sustained a double fracture of her right

foot. She remained in the hospital until September 1, 1978.

On January 26, 1979, a court reporter and an investigator for respondents talked with Harvey Medcalf. Medcalf indicated at that time that he felt responsible for Marilyn Gum's accident because he did not spend enough time with her to ensure that she was manipulating the brace properly. At trial, he did not deny making the statement, but he testified that at the time the statement was taken, he was under the impression that Marilyn Gum failed to lock her brace.

At trial, Harry Gum testified that he observed and examined the leg brace one day before the accident, and found that its bolts and joints were loose. He observed no welding or other burn marks on the brace. After the accident, Harry Gum testified that the brace had burn marks and that there were burrs or protrusions of metal on the locking mechanism that prevented the brace from going into a fully locked position. On August 30, 1978, after the accident, Harry Gum went to Medcalf Orthopaedic to get the brace repaired. The Medcalf Orthopaedic employee had to file off the burrs in order to lock the brace.

Harvey Medcalf testified that the bale lock used on Marilyn Gum's brace is the most extensively used lock in the orthopaedic appliance industry and is totally reliable. A bale lock consists of a locking lever and a bale, and the lock is situated on the knee joint of a leg brace. A user engages the bale lock by extending the brace, which forces the bale to engage the locking lever. Harvey Medcalf stated that a leg brace must be locked in order for the user to take a single step. If the bale is not locked, the leg brace will collapse immediately upon the user's first step. Hugh Coyle testified that once locked, a bale lock cannot disengage by itself, but can only unlock by the user pulling or bumping the locking lever. Hugh Coyle has never heard of a situation in which a bale lock has disengaged by itself.

Marilyn Gum testified at trial that since the day of her accident, she has suffered pain and weakness in her right shoulder, has been confined to her wheelchair, and has been unable to get out of her wheelchair on her own. She requires assistance in putting on her brace because her right foot has been swollen since the accident. After the accident, she consulted several doctors concerning the pain and limitation of movement in her right shoulder and arm, and she may require surgery in the future. Before the accident, she did the family shopping and enjoyed frequent camping trips. Since her accident, however, she has been under constant stress and pain and has been forced to curtail the activities she previously had enjoyed. There was testimony by respondents that medical expenses incurred by Marilyn Gum since her fall in 1978 totaled approximately $3,500.

Harry Gum testified that he retired early to be home to attend to his spouse's needs. He now has to lift Marilyn Gum out of her wheelchair and has to bring a bedpan to her at night. He also had to elevate the bed and chairs in their home so that Marilyn Gum could get out of them. Respondents have had to curtail their sex life since the accident.

On appeal, appellant argues that the trial court erred in refusing to allow Harvey Medcalf to explain prior inconsistent statements and in denying appellant's motions for a mistrial. Appellant also argues that there was insufficient evidence to support the jury's finding that its negligence was a direct cause of Marilyn Gum's injuries and to support the amount of damages awarded.

## ISSUES

1. Did the trial court commit reversible error in failing to allow a witness to fully explain a prior statement?

2. Did the trial court err in denying appellant's motions for a mistrial?

3. Was there sufficient evidence to sustain the jury's finding of causation?

4. Was there sufficient evidence to sustain the amount of the jury's award of damages?

## ANALYSIS

1. Appellant contends that after counsel for respondents questioned Harvey Medcalf about his statement of January 26, 1979 that he felt "a little responsible" for Marilyn Gum's fall, the trial judge erred in refusing to allow Medcalf to explain on redirect his mistaken impression of how Marilyn Gum's accident occurred. The trial judge ruled that Medcalf's explanation of his mistaken impression was irrelevant. Appellant asserts that his explanation, that he did not know at the time he gave the statement that Marilyn Gum had locked her brace, had walked into the clinic, and had walked back out when she fell, was absolutely critical to establishing Medcalf's credibility in the eyes of the jury.

Appellant cites *Auger v. Rofshus*, 267 Minn. 87, 125 N.W.2d 159 (1963), in which the supreme court stated that "[i]t is a general rule that a witness may always explain the circumstances under which differing statements have been made" and that "[c]ourts should be liberal in affording witnesses an opportunity to reconcile versions which are at variance." *Id.* at 91, 25 N.W.2d at 162. Significantly, the court required that the error be prejudicial. *Id.*

Appellant also relies on *Kellett v. Wasnie*, 261 Minn. 440, 112 N.W.2d 820 (1962). In that case, the trial court failed to allow the defendant-owner of a car that was involved in an accident to explain why he initially thought the plaintiff was the driver and not the passenger when the accident occurred. The supreme court granted defendant a new trial, holding that "[w]here the case is close on the facts the rejection of competent and material evidence is reversible error." *Id.* at 450, 112 N.W.2d at 826. The ruling of the trial court regarding the reception of evidence is not reversible error "unless it is shown that there was a clear abuse of discretion or that the ruling was arbitrary." *Id.* at 445, 112 N.W.2d at 824. In addition, "the erroneous exclu-

sion of testimony does not justify a new trial unless its admission might have resulted in a different verdict." *Id.* at 449, 112 N.W.2d at 826.

In this case, although the trial judge prevented Harvey Medcalf from fully explaining the prior statement, Medcalf did state his impression at the time of the statement on several occasions during trial, albeit in a cursory manner. We believe that it is unlikely that a further explanation would have changed the verdict in light of the jury's award of over $300,000 and the finding of no negligence on the part of Marilyn Gum. Appellant is entitled to a fair trial, not a perfect trial. In this case, appellant is requesting a third jury trial. Although the trial court should not have excluded Medcalf's testimony, we hold that such error does not call for a third trial.

2. Appellant next argues that it was denied a fair trial because the trial judge assumed the role of advocate by raising objections during Harvey Medcalf's direct examination, commented to the jury about Medcalf's qualifications, commented about the cross-examination of Marilyn Gum to the jury, and restricted appellant's cross-examination of Marilyn Gum regarding her damages.

In *Hansen v. St. Paul City Railway Co.*, 231 Minn. 354, 360, 43 N.W.2d 260, 264 (1950), the supreme court stated that the trial judge "should refrain from remarks which might injure either of the parties to the litigation" and "should not act as counsel for a party by raising objections which the party should make." The *Hansen* court granted a new trial because the numerous "caustic clashes" between the court and counsel, many of which occurred in the presence of the jury, might have prejudiced the rights of the losing party. *See id.* We find that the trial judge's comments did not constitute prejudicial error in this case. Again, appellant has had the opportunity to present its case in two trials, resulting in verdicts against it in an amount exceeding $250,000.

Appellant also argues that respondents' counsel prejudiced it during closing arguments by asserting that appellant had destroyed important evidence in the case. An objection was sustained, and the trial judge gave a curative instruction. Appellant concedes that a mistrial motion based on inappropriate remarks made during closing argument is left to the trial court's discretion. *See Bisbee v. Ruppert*, 306 Minn. 39, 47, 235 N.W.2d 364, 370 (1975). Furthermore, a curative instruction usually will mitigate any prejudice resulting from the improper remarks. *See id.* at 47–48, 235 N.W.2d at 370. We find no reversible error here.

3. Appellant contests the jury's finding on causation, arguing that the only evidence introduced by respondents that arguably relates to causation was Harry Gum's testimony that he saw a burr on the bale lock after the fall; he did not testify about the lock's condition immediately before the fall or about the cause of the fall. Marilyn Gum testified that the leg brace was locked as she walked out of the clinic, and the only expert witnesses called in this case testified that the brace must be locked in order to take a single step and that the brace could not have unlocked by itself.

In a civil action, plaintiffs are not required to prove their case beyond a doubt; "all that plaintiffs are required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause." *Lindgren v. Voge*, 260 Minn. 262, 269, 109 N.W.2d 754, 760 (1961). Furthermore, plaintiffs are not required to prove by direct testimony every fact and circumstance going to the identification of proximate cause. *Id.* Causation is a fact issue to be determined by the jury, and the jury is free to make reasonable inferences. *See id.* In determining on appeal whether the trial court erred in denying appellant's motion for JNOV or in the alternative a new trial, this court must view the evidence most favorable to the verdict. *Johnson v. Evanski*, 221 Minn. 323, 327, 22 N.W.2d

213, 215 (1946). The supreme court has stated the standard of review as follows:

> [A] motion for a judgment notwithstanding, whether based on negligence or on contributory negligence, should be denied unless the evidence in support of the verdict, and all reasonable inferences to be drawn therefrom, be so wholly incredible and unworthy of belief or so conclusively overcome by other uncontradicted evidence that the want of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable [people].

*Id.*

We hold that there was sufficient evidence to support the jury's finding of causation. Marilyn Gum testified that she used the brace for approximately ten years before the accident occurred, and that the brace collapsed within one hour after appellant had serviced it. She told Harvey Medcalf that the brace was not locking properly, and his own statement tended to show negligence and causation. Harry Gum testified that he has been experienced with braces since 1954, had inspected the brace immediately before it was taken to appellant for repairs and immediately after the fall, and had observed no burn or welding marks until after the accident. The jury reasonably could have determined that the experts' testimony was contradicted by Marilyn Gum's testimony.

4. Appellant's final argument is that the jury's findings on damages are excessive and are not supported by the evidence. The jury awarded a total of $315,000—$240,000 for Marilyn Gum and $75,000 for Harry Gum. Appellant and respondents state the amount of medical expenses at less than $4,000. During closing arguments, counsel for respondents requested $300,000 for Marilyn Gum and $150,000 for Harry Gum.

Minnesota Rule of Civil Procedure 59.01(5) provides for a new trial for "[e]xcessive or insufficient damages, ap-

pearing to have been given under the influence of passion or prejudice." To be excessive, the damages award "must so greatly exceed what is adequate as to be accountable on no other basis than passion and prejudice." *Kinikin v. Heupel,* 305 N.W.2d 589, 596 (Minn.1981). The trial court has broad discretion in determining whether a new trial should be granted based upon the claim that the jury awarded excessive damages. *See Bigham v. J.C. Penney Co.,* 268 N.W.2d 892, 898 (Minn. 1978).

██ We find that there was sufficient evidence to support the amount of damages awarded. The trial court stated in its memorandum accompanying its denial of appellant's motions for a new trial or JNOV:

> Testimony indicated that Plaintiff Mrs. Gum, though a polio victim, was mobile before the accident of August 29, 1978. Since that time, she has been confined to a wheelchair, must use specially customized furnishings, needs assistance to move in and out of her wheelchair, must refrain from most activities in which she engaged before the accident and has lost the use of her one good arm. Mrs. Gum may also need surgery in the future. The testimony further indicated that Plaintiff Mr. Gum suffered the loss of his wife's companionship and consortium. He must also assist his wife in nearly every facet of her day-to-day living.

The trial court did not exceed the bounds of its discretion in denying appellant's motions.

## DECISION

The trial court did not commit reversible error in failing to allow Harvey Medcalf to fully explain a prior statement and in denying appellant's motions for a mistrial. There was sufficient evidence to sustain the jury's finding of causation and to sustain the amount of damages awarded.

Affirmed.