Kenneth BAHL, Trustee for the heirs and next of kin of Sara Bahl, decedent, Respondent,

v.

COUNTRY CLUB MARKET, INC., Appellant.

No. C3–87–341.

Court of Appeals of Minnesota.

Aug. 25, 1987.

Robert H. Tennant, III, Bell, Arcand, Florin & Tennant, St. Paul, for respondent.

Roy W. Holsten, Christina R. Palme-Krizak, Holsten Law Offices, P.A., Stillwater, for appellant.

Heard, considered and decided by POPOVICH, C.J., FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

The jury in this wrongful death action returned a special verdict finding that appellant Country Club Market had been negligent and that its negligence had caused the death of Sara Bahl. The jury also found that Ms. Bahl was not negligent. Appellant moved to have the verdict set aside or for judgment notwithstanding the verdict (JNOV). The motion was denied, and judgment was entered according to the verdict. Appellant argues that the trial court abused its discretion in excluding portions of Ms. Bahl's medical records, that the court erred in denying the motion for JNOV where there was no evidence of negligence or proximate cause and that the court erred in failing to set aside the verdict because of the lack of evidence of negligence or proximate cause. We affirm.

## FACTS

Sara Bahl, age 32, died on December 13, 1984, the day after striking her head while at appellant's store. Her husband, respondent Kenneth Bahl, brought this wrongful death action, alleging that his wife slipped and fell on water appellant had negligently allowed to accumulate near the door of the store. This fall, according to respondent, caused his wife's death. Appellant denied negligence and contended that Ms. Bahl suffered from a pre-existing medical condition that caused her to collapse shortly after entering the store, thereby striking her head on the floor.

On December 12, 1984, Ms. Bahl and her friend Verna Mae Miller completed several errands. At about 6 p.m., they arrived at the Country Club Market. Ms. Miller states that as they walked across the parking lot toward the store, they were talking and laughing. Ms. Miller, who was ahead of Ms. Bahl as they entered the store, walked toward a Kool-Aid display. She heard Ms. Bahl call her name, heard a thud and turned to see Ms. Bahl on the floor. She did not see whether Ms. Bahl had fallen or collapsed.

Ms. Miller testified that she had noticed tracks on the floor both as she entered the store and as she comforted Ms. Bahl as she lay on the floor of the store. Ms. Miller also testified that a woman about 50 years old had told her shortly after Ms. Bahl's accident that Ms. Bahl had fallen. Kent

Muenchow, a carry-out boy at the store, also testified that a 50 year old woman had told him that Ms. Bahl had fallen. The woman was not identified.

Muenchow also testified that he had seen Ms. Bahl and Ms. Miller enter the store, although he acknowledged he was talking to another carry-out person at the time. He said he saw Ms. Miller walk toward the Kool-Aid display and Ms. Bahl go toward the grocery cart. According to Muenchow, Ms. Bahl paused for two or three seconds and then collapsed as if someone had pushed her down. He stated that there had been a rug near the door, but that it had been removed earlier in the day because it filled with water. It was not replaced prior to the time Ms. Bahl entered the store. According to Muenchow, the entrance was an area that needed to be mopped and watched by the carry outs because water accumulated quickly during the winter. He had dry mopped the area ten to fifteen minutes before Ms. Bahl entered the store, and stated that the floor was dry at the time of Ms. Bahl's collapse. After paramedics had removed her, Muenchow said he again mopped the area, finding only urine and blood.

The medical examiner who performed an autopsy on Ms. Bahl testified that the cause of death was "cerebral edema with herniation, due to closed head trauma from a fall." Dr. McGee, the medical examiner, added that he found no evidence of a preexisting condition to the brain and that the physical evidence he found was consistent with injuries one could receive in falling and hitting the floor. He was aware of the allegation that Ms. Bahl had collapsed, but stated that there was "nothing anatomically that would correspond with that." He said the injury would more likely occur with someone falling rather than going down slowly.

However, Dr. McGee stated that he was unable to resolve the issue of whether Ms. Bahl had collapsed or fallen because there were no eyewitnesses. Because of Dr. McGee's inability to resolve the issue, the cause of death on the death certificate was changed from "accident" to "undetermined cause." Dr. McGee said the change was made after he talked with appellant's counsel.

Appellant's medical witness, Dr. McPartlin, studied Ms. Bahl's medical history, reports of her treatment on December 12 and 13 and the autopsy report. The medical history included emergency room treatment for severe headaches less than a month before her death. In responding to a hypothetical question summarizing this information and incorporating the hypothetical fact that Ms. Bahl had collapsed, thereby striking her head on the floor, Dr. McPartlin concluded that "she was unconscious at the time that she hit the floor." He agreed that there was no question but that she had struck her head hard. However, it was Dr. McPartlin's opinion that a pre-existing medical condition caused the collapse that preceded the blow to her head.

The jury returned a special verdict finding appellant had been negligent and that its negligence was the cause of Ms. Bahl's injury. The jury found that Ms. Bahl was not negligent. Appellant moved for JNOV, and the motion was denied.

### ISSUES

1. Did the trial court abuse its discretion in excluding from evidence portions of medical records referring to the cause of Ms. Bahl's injury?

2. Did the trial court err in denying the motion for JNOV because there was insufficient evidence of negligence or causation?

3. Did the trial court err in refusing to set aside the jury verdict?

### ANALYSIS

#### I.

■ The trial court granted respondent's motion in limine, excluding hearsay reports of collapse contained in medical records. Appellant asserts that the evidence should have been admitted as an exception to the hearsay rule under Minn.R.Evid. 803(6) as part of a regularly kept business record and under Rule 803(4) as a statement made

for the purpose of medical diagnosis or treatment.

Evidentiary rulings are committed to the trial court's sound discretion and will be reversed only if there has been an abuse of discretion. *Cole v. Paulson*, 380 N.W.2d 215, 219 (Minn.Ct.App.1986) (citing *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983)). The trial court's determination controls "unless practical justice requires otherwise." *Colby v. Gibbons*, 276 N.W.2d 170, 175 (Minn.1979) (quoting *Hiedeman v. Hiedeman*, 290 Minn. 210, 217, 187 N.W.2d 119, 124 (1971)).

To be admissible as a business record under Rule 803(6), the statements must be trustworthy. The statements in the medical records are from unidentified sources. They clearly were not made by Ms. Bahl. In this case, there is little indication of trustworthiness, and it was not an abuse of discretion to exclude the evidence.

Furthermore, the party complaining of a discretionary ruling must show that the ruling resulted in harm or prejudice to his case. *Electric Service Co. of Duluth v. Lakehead Electric Co.*, 291 Minn. 22, 26, 189 N.W.2d 489, 492 (Minn.1971). In this instance, although the judge excluded reference in the medical records to "collapse," he did allow numerous references in testimony to appellant's theory that Ms. Bahl collapsed. Appellant's expert witness, Dr. McPartlin, responded to a hypothetical question that incorporated the assumption that Ms. Bahl had collapsed. Kent Muenchow testified that he had seen Ms. Bahl collapse. The medical examiner, Dr. McGee, also addressed appellant's assertion that Ms. Bahl collapsed.

It appears that the trial court allowed appellant an abundant opportunity to present its theory of the case. Appellant was not prejudiced by the exclusion of reference to the cause of Ms. Bahl's fall in the medical records, and the trial court did not abuse its discretion in excluding the evidence.

## II.

When a trial court considers a motion for JNOV,

the motion should be denied unless the evidence in support of the verdict, and all reasonable inferences to be drawn therefrom, be so wholly incredible and unworthy of belief or so conclusively overcome by other uncontradicted evidence that the want of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable [people].

*Gum v. Medcalf Orthopaedic Appliance Co.*, 380 N.W.2d 916, 921 (Minn.Ct.App. 1986) (quoting *Johnson v. Evanski*, 221 Minn. 323, 327, 22 N.W.2d 213, 215 (1946)). The evidence must be viewed in the light most favorable to the verdict, and the verdict should stand unless it is manifestly and palpably contrary to the evidence. *Bethesda Lutheran Church v. Twin Cities Construction Co.*, 356 N.W.2d 344, 348 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 5, 1985) (citing *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980)).

### A. Evidence of negligence

Appellant argues that the trial court erred in denying its motion for JNOV because there was no evidence that appellant was negligent. Specifically, appellant asserts that respondent failed to prove that appellant knew, or in the exercise of reasonable care should have known, of a dangerous condition concerning the floor near the store's entrance.

The evidence, however, must be viewed in the light most favorable to the verdict, and all reasonable inferences must be drawn from the evidence. Ms. Bahl entered this store in Minnesota in mid-December, a month when it can be expected that there will be snow on the ground. Weather records were introduced showing snowfall. Muenchow said that a rug was normally kept by the door because water accumulated rapidly, but that the rug had been removed because it was full of water and that it had not been replaced. His testimony was not contradicted by the store manager who stated that approximately a thousand people enter the store each day and that from four to seven p.m.

is the busiest time of the day. Ms. Bahl entered the store at about 6 p.m.

Appellant relies on *Otis v. First National Bank Minneapolis*, 292 Minn. 497, 195 N.W.2d 432 (1972) as a case where the plaintiff had failed to show the defendant had actual or constructive notice that a puddle of water had accumulated on the floor during a heavily raining day. However, in *Otis* the bank had been open only 20 minutes at the time of the plaintiff's fall, and there was no evidence the defendant was aware of the need to place a rug to absorb an accumulation of water or to frequently mop the area.

Under the circumstances of this case, we believe the jury reasonably could infer that appellant knew of the danger that would result from the rapid accumulation of water near the door and the need to place a rug in that area. The jury also could reasonably infer that after the water-filled rug had been removed, a sufficient amount of water could accumulate within ten to fifteen minutes to create a dangerous condition, particularly during the busiest time of the day. Even if appellant did not know that there was an unsafe amount of water on the floor at the time Ms. Bahl entered the store, the jury could infer that with reasonable care it should have known of the dangerous condition. Consequently, we conclude that the evidence of negligence is not so wholly incredible and unworthy of belief as to mandate granting the motion for JNOV.

**B. Evidence of causation**

■ Appellant contends that, even if it were negligent, there is no evidence showing that its negligence was the cause of Ms. Bahl's injury. Although Dr. McGee testified that the injury was consistent with a fall, appellant points out that the medical examiner did not testify that there was evidence on the cause of the fall. Appellant advanced its pre-existing medical condition theory at trial and on appeal asserts that respondent failed to satisfy his burden of showing that his theory of causation

outweighs and preponderates over this theory. We cannot agree.

As this court has observed:

In a civil action, plaintiffs are not required to prove their case beyond a doubt; "all that plaintiffs are required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause." Furthermore, plaintiffs are not required to prove by direct testimony every fact and circumstance going to the identification of proximate cause. Causation is a fact issue to be determined by the jury, and the jury is free to make reasonable inferences.

*Gum*, 380 N.W.2d at 921 (citations omitted). This court has also held that causation can be found as a matter of law only where the facts are undisputed and are reasonably susceptible of only one inference, or where reasonable people can come to no other conclusion. *Betz v. Nelson*, 367 N.W.2d 922, 925 (Minn.Ct.App.1985), *rev. dismissed* (Minn. July 26, 1985). Where reasonable minds can differ, the jury should resolve the issue, and it would be error to grant JNOV. *Id.* at 926.

Here, the jury was presented with evidence relating to two distinct and inconsistent theories of causation. Although Dr. McPartlin stated that it was his opinion Ms. Bahl had a preexisting medical condition, Dr. McGee stated that his autopsy revealed no evidence of such a condition. This testimonial dispute was submitted appropriately to the jury for its consideration. Reasonable minds could differ regarding causation, and the jury's determination on this issue is supported by the record. The trial court did not err in denying JNOV.

**III.**

■ In asserting that the trial court erred in failing to set aside the special verdict, appellant reasserts its arguments regarding insufficient evidence of negligence and proximate cause. Answers to special verdict questions should be set aside only if they are perverse and palpably contrary to the evidence. *Cole*, 380

N.W.2d at 218. The evidence must be viewed in the light most favorable to the verdict, and the verdict should be overturned only if no reasonable mind could find as the jury did. *Fallin v. Maplewood-North St. Paul District No. 622*, 362 N.W.2d 318, 322–23 (Minn.1985).

As explained in the analysis of the trial court's denial of JNOV, there is sufficient evidence of negligence and proximate cause to support the verdict.

### DECISION

The trial court did not abuse its discretion in excluding hearsay evidence, and the court did not err in denying the motion for JNOV or in refusing to set aside the jury verdict.

Affirmed.