Julie M. BOWEN, Appellant,

v.

David B. ARNOLD, individually, and Arnold & McDowell, Respondent.

No. C8–85–1058.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Review Denied March 27, 1986.

532

Douglas A. Hedin, Minneapolis, for appellant.

Kenneth W. Dodge, Dianna R. Stallone, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

This appeal is from an order denying a new trial in a legal malpractice action. The jury found that lawyer David Arnold had not been negligent in representing appellant Julie Spande in a marital dissolution proceeding. We affirm.

## FACTS

In early September 1979 Julie Bowen Spande went to the Princeton, Minnesota, office of attorney David Arnold to discuss the possible dissolution of her 11-year marriage to Ronald Bowen. Arnold had been in the general practice of law for approximately ten years. A substantial amount of his early legal work involved family law, but by 1979 it was only two percent of his practice. Arnold said he explained marital dissolution procedures generally and discussed various discovery devices available to determine and evaluate marital assets; Spande denies that he explained discovery procedures to her.

Spande returned to Arnold's office about two months later. She was accompanied by Bowen, who was not represented by counsel. Bowen presented a written settlement proposal disposing of his landscaping business, Prairie Restorations, by giving Spande 12 percent of his 91.8 percent ownership. Bowen valued the business at $60,000.

Arnold told Spande that in a contested dissolution proceeding, she could expect to receive anywhere from zero to 50 percent of the value of her husband's interest in the business. Arnold also told Spande that he did not have enough information to verify or deny Bowen's valuation and that an independent appraisal could be performed. Arnold testified that he affirmatively recommended that Spande hire an appraiser; Spande testified that he discouraged her from doing so. Arnold testified that he again discussed discovery devices available to gain access to financial records, and Spande testified that he did not. Spande said in that meeting that she trusted her husband's valuation and declined to order an independent appraisal. Bowen offered to make his financial records available to Arnold. He had with him a corporate minutes book, which he showed Arnold. Arnold did not ask to see Bowen's other financial records. Bowen's proposal was incorporated without change into the stipulation, which the parties signed on November 11.

On November 14 Spande met with Arnold and expressed reservations about the stipulation. Arnold told her that it was effective only if approved by the court. He also told her that she could change her mind and she could have the business appraised. Spande testified that he discouraged her, saying, "It's going to be very costly, time consuming * * * you may end up with less than what you are getting right now." The stipulation was ultimately approved by the court. Spande received a $9,000 lien on the parties' homestead in return for relinquishing her interest in Prairie Restorations.

In August 1981 Spande commenced a legal malpractice action against Arnold and his law firm, alleging negligence and breach of contract. The negligence count claimed that Arnold breached his duty to "ascertain and inform himself and his client of the financial assets of the parties, including the nature, extent or value of Ronald W. Bowen's interest in Prairie Restorations, Inc. * * * and to negotiate for the plaintiff a fair division of the parties' marital property."

At trial Spande's expert witness, attorney M. Sue Wilson, testified that Arnold had breached his duty to conduct minimal discovery and to inform himself and his client of the financial assets of the couple. Arnold's expert witness, attorney William Haugh, testified that Arnold had no such duty under the facts of this case and Arnold had not departed from the standard of care required. The value of Prairie Restorations in November 1979 was set at $103,447 by Spande's expert and $48,740 by Arnold's expert.

Before submitting the case to the jury, the trial court dismissed the count of

Spande's complaint alleging breach of contract. The court declined to submit jury instructions prepared by Spande's attorney defining the duty of a lawyer and instructed the jury on comparative negligence, stating that Spande had a duty to protect her own financial interests, given the information and legal alternatives made known to her.

The jury returned a special verdict finding Arnold was not negligent. The jury did not reach the verdict question requiring a comparison of Spande's fault with Arnold's. Spande moved for a new trial, and the motion was denied. Spande appeals from this order.

### ISSUES

1. Did the trial court abuse its discretion in refusing to submit Spande's requested jury instructions on the duty of an attorney?

2. Did the trial court's evidentiary rulings on damages and the scope of cross-examination constitute abuse of discretion?

3. Did the trial court err in instructing the jury on comparative negligence?

4. Did the trial court abuse its discretion in dismissing Spande's claim for breach of contract?

5. Does the evidence support the jury's verdict?

### ANALYSIS

#### I

Spande argues that the trial court erred in refusing to present either of the following jury instructions:

PLAINTIFF'S JURY INSTRUCTION NO. 6: As an attorney who had undertaken to render professional legal services to Julie Bowen, David Arnold had a duty to inform himself and his client completely and accurately of the financial assets of both parties to the divorce proceeding, specifically including the nature, extent and value of Ronald W. Bowen's interest in the corporation known as Prairie Restorations, Inc.

PLAINTIFF'S JURY INSTRUCTION NO. 8: A lawyer who undertakes to represent and render professional services to a client to a dissolution proceeding is under a duty to the client to inform himself completely and accurately of the financial assets of both parties to the proceeding including the interest of one party in a closely held corporation.

The instructions actually submitted to the jury, on the issue of an attorney's duty of care, were as follows:

An attorney must use that degree of skill and learning which is normally possessed and used by attorneys in good standing under like conditions.

In the application of this skill and learning the attorney must use reasonable care. He must also act in good faith. He is not liable for an error or mistake in judgment, as long as he acts in the honest belief that his advice or acts are well-founded and in the best interests of his client.

*A lawyer should exert his best efforts to ensure the decisions of his client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate this decision-making process if the client does not do so.*

\*    \*    \*    \*    \*    \*

*And in the final analysis, however, the lawyer should always remember that the decision whether to forgo legally available objectives or methods because of non-legal factors is ultimately for the client and not for himself.*
(Emphasis added).

Spande's theory of the case was that "at a minimum, [Arnold] had the duty to obtain the current financial and bank records of the corporation and make those records available to his client." If he had done so, "she would have realized that her husband had $26,000 in ready assets in the corporate bank account * * * and with that information she surely would have demanded [an appraisal]." Without that information, appellant argues, she could not make an

"informed decision to accept or reject her husband's settlement proposal."

The court's instruction accurately stated the applicable law while not foreclosing Spande from arguing her theory. *See Van Tassel v. Hillerns*, 311 Minn. 252, 257, 248 N.W.2d 313, 316 (1976). When the general charge fairly and correctly states the applicable law, the trial court has considerable discretion to determine whether a specific instruction should be given. *Lhotka v. Larson*, 307 Minn. 121, 127 n. 16, 238 N.W.2d 870, 875 n. 16 (1976). Spande's proposed instruction suggests that an attorney is under a duty to proceed with legal services even when the client expressly refused them. This is not an accurate statement of the law. The trial court did not abuse its discretion in refusing to give the alternate instruction.

## II

Spande also appeals several evidentiary rulings which she claims separately and cumulatively resulted in an unfair trial. Review of a court's decision to receive testimony is limited to determining whether there was a clear abuse of discretion or whether the ruling was arbitrary. *Kellett v. Wasnie*, 261 Minn. 440, 445, 112 N.W.2d 820, 824 (1962).

The first claimed evidentiary error is the trial court's refusal to permit Arnold to be cross-examined about a CLE seminar he attended in early October 1979 on "Purchase and Sale of a Business." The evidence was objected to on grounds of relevancy. Spande contends that the information was relevant because it dealt with "methods of business valuation and * * * the importance of obtaining financial data and records of the business before forming an opinion on its value."

The issue in a malpractice case is the degree of care, skill and diligence professionals ordinarily exercise under like circumstances. *See City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 424 (Minn. 1978). Evidence of attendance at the seminar and the knowledge which presumably resulted from attending that seminar is not relevant to whether a practitioner's performance meets the standard of care.

Spande also argues that the trial court erred in permitting Arnold to testify as to his opinion on how a particular judge would divide a closely held corporation in a dissolution proceeding. This evidence was elicited on the issue of damages. Expert testimony had earlier been received from each of the experts on the percentage division of marital assets in dissolution cases in Minnesota. Spande contends that testimony on a specific judge's likely division of marital property is inherently conjectural and beyond Arnold's personal knowledge. Arnold's testimony on how the case would have been decided had it gone to trial is not first-hand knowledge and should properly have been excluded. This testimony, however, related to the issue of damages. Because the jury did not find Arnold negligent, the issue of damages is moot. Allowing the evidence was harmless error.

Spande next argues that the trial court erred in permitting Arnold's attorney to cross-examine her about her whereabouts on Labor Day weekend 1979. The attorney elicited the fact that she had not been with her family that weekend, but had seen Harley Spande, whom she later married. Later, on cross-examination, Ronald Bowen was asked whether Harley Spande had become a source of difficulty within the marriage. Objections were made on the ground that the questions were irrelevant and prejudicial.

Arnold testified that Spande indicated on several occasions that she was interested in obtaining the dissolution quickly. Arnold's counsel questioned Spande about her relationship with Harley Spande only after she denied that she wanted to dissolve her marriage quickly. This line of cross-examination was only marginally relevant and potentially prejudicial, but allowing it was not so prejudicial as to constitute an abuse of the trial court's discretion.

Spande also argues that the trial court erred in refusing to permit full cross-

examination of William Haugh, an expert witness, about CLE material he wrote. The material was introduced on the issue of an attorney's duty to use pretrial discovery. On cross-examination, Haugh was asked to read a paragraph on settlement negotiations. A relevancy objection was sustained because the paragraph related to contested cases, and Arnold claimed Spande's dissolution was not contested.

We are not persuaded that the evidence was irrelevant, but we believe the trial court's ruling is not reversible error. Haugh had already read four out of the five sections of the paper, including statements on the importance of gathering data fully, preparation of initial pleadings, including orders to produce documents, and pretrial discovery which contained the following excerpt:

> [I]t is extremely important that one utilize pre-trial discovery to its fullest in even the simplest dissolution proceedings, to acquire as much information as is possible before embarking upon settlement negotiations.

At another point Haugh stated, "In most [CLE] seminars on dissolution proceedings, I [say that it is extremely important to use pre-trial discovery] and in contested cases I always tell them that." The court's refusal to allow Haugh to be fully cross-examined was harmless error because the excluded testimony contained no additional references to the need to conduct pretrial discovery.

■ Finally, Spande argues that the trial court erred in refusing to permit full cross-examination of William Haugh about another legal malpractice case in which he was an expert witness for the defense.

When asked by Spande's attorney about the court's decision in that case, Arnold's attorney asked to approach the bench. An off-the-record discussion was held, after which Spande's attorney did not question Haugh further. Spande's attorney moved for an order to correct the transcript to reflect an objection by Arnold's attorney and the sustaining of that objection; the trial judge denied the motion. Because the record does not reflect the objection, we will not consider it on appeal.

### III

■ Spande argues that the trial court abused its discretion in submitting the case to the jury under the comparative negligence statute, Minn.Stat. § 604.01. The jury was instructed that

> a client must use reasonable care to protect her own financial interests, given the information and legal alternatives made known to her.

Spande contends that under the facts of this case, where she was in a relatively uninformed and powerless position, the issue of her negligence should not have been submitted to the jury. Although we question whether there was sufficient evidence of negligence on her part to go to the jury, its submission was not reversible error. The jury found that Arnold was not negligent. We cannot say on this record that the comparative fault instruction prejudicially affected the jury's determination that Arnold was not negligent.

### IV

■ Spande argues that the trial court erroneously dismissed her claim for breach of contract. The breach of contract claim alleged that Arnold agreed to represent Spande properly and he breached this contract by failing to accurately ascertain the value of Prairie Restorations. This claim is identical to the negligence claim submitted to the jury. Spande failed to show on appeal how the trial court's action prejudiced her.

### V

■ Finally, Spande argues that the jury's verdict is not justified by the evidence. A jury verdict will not be overturned unless it is manifestly and palpably contrary to the evidence. *See Sandhofer v. Abbott-Northwestern*, 283 N.W.2d 362 at 368 (Minn.1979). A reasonable jury *could* have found that Arnold did not zealously represent his client by encouraging her to assert her legal rights in having an apprais-

al performed. However, a reasonable jury could also have found that Spande made an informed decision to forego the procedure. The jury's verdict must stand.

## DECISION

The trial court did not err in refusing to submit appellant's requested jury instructions or in dismissing the breach of contract claim. The submission of Spande's fault to the jury was not reversible error because the jury found Arnold was not negligent. The court did not abuse its discretion in its evidentiary rulings. The evidence is sufficient to sustain the verdict.

Affirmed.