*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1287**

Kerry M. Mokalla,
on behalf of A.M. and A.M., petitioner,
Respondent,

vs.

Mani M. Mokalla,
Appellant

**Filed June 20, 2016
Affirmed
Worke, Judge**

Hennepin County District Court
File Nos. 27-FA-15-555, 27-FA-15-1380

Michael D. Dittberner, Linder, Dittberner, Bryant & Winter, Ltd., Edina, Minnesota (for respondent)

Dan Rasmus, Hovland & Rasmus, PLLC, Edina, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Schellhas, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant-father challenges the district court's issuance of an order for protection (OFP), arguing that the record does not support a finding that domestic abuse occurred and that the district court's order is inconsistent because it grants protection to

respondent-mother and two children while denying protection to another child. Respondent-mother argues that the district court erred by failing to incorporate an order for custody and parenting time. We affirm.

**FACTS**

Appellant-father Mani M. Mokalla and respondent-mother Kerry M. Mokalla have three children: A.M.M., A.A.M., and A.B.M. On January 27, 2015, mother petitioned for an OFP. At the evidentiary hearing, mother testified that she hosted a book-club meeting on January 23 at the parties' residence. During the meeting, mother heard a child scream. A.M.M. went to his mother and said that he needed help because father had hurt and scared him. A.M.M. was "shaking and very scared." Mother later noticed that A.M.M. had texted her, indicating that he felt like calling 911 and needed help.

A.M.M. informed mother that father pushed him on his bed. Father approached and mother told him to leave, but father cornered her and screamed: "I'm not gonna f-cking leave this f-cking house. I'm gonna take a f-cking sauna in my f-cking house." That night, mother slept in A.M.M.'s room because she feared what father might do.

Mother testified that A.A.M. "burst into tears" the next morning and stated that father had been mean to A.M.M. A.A.M. told mother that she saw A.M.M. and father arguing over a cell phone. A.A.M. also heard A.M.M. say "ouch," "[g]et off of me," and "North Duluth."[1] A.B.M. made similar statements to mother.

Mother also testified that after returning from a trip on January 19, A.A.M. indicated that father had poked A.M.M. hard in the chest, yelled at him, and shook him.

---

[1] "North Duluth" is a safe phrase the family created to help deescalate arguments.

A.M.M. told mother that father poked him hard in the chest and yelled at him. Mother also testified that in January 2014, A.M.M. told her that father "held his fist up at him," went into the dining room, and said "I hate that f-cking kid."

Mother testified that in October 2013, she heard A.M.M. scream. Mother went downstairs and saw A.M.M. "cowering in fear" while father stood over him and yelled loudly. A.A.M. witnessed the incident and appeared terrified. A.M.M. stated that father poked him hard in the chest and twisted his arm behind his back. A.M.M. said that father also grabbed his hands and used them to hit A.M.M.'s face while stating, "[T]his is what I could do to you." Mother testified that A.A.M. confirmed the story.

Mother testified that in February 2013, she heard a "loud slapping noise." In the basement, mother saw father holding A.M.M.'s wrists. A.A.M. was hiding behind furniture, "looking terrified." Mother told father to leave, but father backed her against a wall and yelled in her face. Mother grabbed father, and father grabbed her wrists "really hard" for a long time and shook her. Mother was scared, and her wrists hurt for several days. A.A.M. told mother that father had also grabbed A.M.M. by the face "really roughly."

Mother testified that father hit his hand with his fist near her face while vacationing in 2011. When mother asked father why he put his hand near her face, father became angrier and placed his fist within centimeters of her face several times while stating, "This is what putting my fist in your face looks like."

E.M., mother's sister, testified that mother called her on January 23, 2015, and sounded concerned. Mother stated that father refused to leave the house, she was worried

about calling the police, and she asked if she could bring the children to E.M.'s home. E.M. slept at the parties' residence that night until A.A.M. woke her and started crying. A.A.M. stated that father had screamed at A.M.M. and hurt him. A.A.M. also stated that she tried to reach mother, but father blocked her inside her bedroom. A.M.M. informed E.M. that father pushed him and screamed and cursed at him.

C.M., mother's brother, testified that in 2008 he witnessed father pin A.M.M. on a bed and scream at him. Father pressed A.M.M's shoulders into the bed, placed his knee between A.M.M.'s legs, and continued to yell within inches of A.M.M.'s face.

Father testified that on January 23, 2015, A.M.M. accused him of deleting a school project from a cell phone. Father entered A.M.M.'s personal space, causing him to fall onto his bed. Father denied pushing A.M.M. and cornering and swearing at mother. Father also denied threatening or harming A.M.M. between January 16 and 19.

Father testified that in February 2013, he slapped A.M.M.'s hands together to gain his attention. Father testified that mother started yelling and grabbed him, causing him to briefly grab her wrists. Father denied ever twisting A.M.M.'s arm and stated that he never raised his hand toward the children in a way that could be interpreted as though he would strike them. Father denied threatening mother during the 2011 vacation or pinning A.M.M. to his bed as C.M. recalled witnessing in 2008.

In June 2015, the district court issued an OFP for mother, A.M.M., and A.A.M., but it did not include A.B.M. The district court did not address custody and parenting time in its order. Father appeals.

4

**D E C I S I O N**

A district court's decision to grant relief under the Domestic Abuse Act, Minn. Stat. § 518B.01 (2014), is reviewed for an abuse of discretion. *See McIntosh v. McIntosh*, 740 N.W.2d 1, 9 (Minn. App. 2007). A district court abuses its discretion if it grants an OFP that lacks evidentiary support. *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004). An OFP lacks evidentiary support when the findings are clearly erroneous, contrary to the weight of the evidence, or not supported by the evidence as a whole. *Id.* This court reviews the record in the light most favorable to the district court's findings. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009). An appellate court will "neither reconcile conflicting evidence nor decide issues of witness credibility." *Gada*, 684 N.W.2d at 514.

*Sufficiency of the evidence*

Father argues that the evidence is insufficient to support the district court's order. A district court may issue an OFP in cases involving domestic abuse. Minn. Stat. § 518B.01, subd. 6(a). Domestic abuse includes the infliction of physical harm or fear of imminent physical harm by one family or household member against another. *Id.*, subd. 2(a). A district court should issue an OFP when a person manifests a present intent to harm or inflict fear of harm. *Pechovnik*, 765 N.W.2d at 99. An act that does not seem abusive, such as verbal threats or indirect physical aggression, may be found to be abusive when viewed in the context of past abuse or threats. *Boniek v. Boniek*, 443 N.W.2d 196, 198 (Minn. App. 1989).

Father first argues that the evidence is insufficient to establish that he intended to inflict fear of physical harm against A.M.M. We disagree. A.M.M. indicated that on January 23, father pushed him, scared him, and that he needed help.[2] A.M.M. was "shaking and very scared." A.A.M. reported that father screamed at and hurt A.M.M.

The district court also found that a history of abusive and threatening behavior existed. "Present intent to inflict fear of imminent physical harm . . . can be inferred from the totality of the circumstances, including a history of past abusive behavior." *Pechovnik*, 765 N.W.2d at 99. Father previously poked A.M.M. hard in the chest numerous times, shook A.M.M., twisted A.M.M.'s arm behind his back, and grabbed A.M.M.'s hands and used them to hit A.M.M.'s face. Mother previously witnessed father grab A.M.M.'s wrists and scream in his face. C.M. testified that father pressed A.M.M's shoulders into a bed, placed his knee in between A.M.M.'s legs, and screamed within inches of A.M.M.'s face. Considering the totality of the circumstances, the record supports the district court's order.

Father next argues that the evidence is insufficient to establish that he intended to inflict fear of physical harm against mother. We disagree. Mother testified that on January 23, father cornered her and screamed in her face. Mother was scared because

[2] Father briefly argues that A.M.M.'s statements are hearsay and inadmissible due to inconsistencies. But the determination of whether the statements were admissible is based on the totality of the circumstances. *State v. Edwards*, 485 N.W.2d 911, 915 (Minn. 1992). Moreover, district courts have "considerable leeway" when making a determination regarding the admissibility of evidence. *In re Welfare of L.E.P.*, 594 N.W.2d 163, 170 (Minn. 1999); *Bowen v. Arnold*, 380 N.W.2d 531, 535 (Minn. App. 1986) (stating that evidentiary rulings are reviewed for an abuse of discretion), *review denied* (Minn. Mar. 27, 1986). Here, the district court thoroughly analyzed the applicable factors and did not abuse its discretion by admitting A.M.M.'s statements.

father previously acted violently toward her. Mother considered calling the police and asked E.M. for help. Father previously grabbed mother's wrists "really hard" for a long time and shook her. Mother was scared and her wrists hurt for several days. Mother also testified that father placed his fist near her face several times. Considering the totality of the circumstances, the record supports the district court's order. *See id.* (considering the totality of the circumstances and past abusive behavior).

Father next argues that the evidence is insufficient to establish that he intended to inflict fear of physical harm against A.A.M. We disagree. On January 23, A.A.M. witnessed father and A.M.M. arguing over a cell phone. A.A.M. reported that father screamed at and hurt A.M.M. A.A.M. heard A.M.M. screaming in pain, and she attempted to reach mother several times but father trapped her in her room.

The district court found that A.A.M. previously witnessed father scream at A.M.M., poke his chest, twist his arm behind his back, and grab his wrists. A.A.M. appeared terrified when she witnessed these events. Considering the totality of the circumstances, the record supports the district court's order. *See Boniek*, 443 N.W.2d at 198 (stating that witnessing a party's physical aggression toward a third-party may also be seen as an attempt to inflict fear).

Father also argues that the OFP is inconsistent because it excluded A.B.M. from its protection. Assuming that father can challenge the OFP on the ground that it should have covered A.B.M. in addition to the others, we are not persuaded. The record does not establish that A.B.M. witnessed the incidents detailed in the OFP, and the only evidence establishing that A.B.M. might fear father is that she overheard the January 23

7

incident. Therefore, considering the totality of the circumstances, the district court did not abuse its discretion by granting the OFP.

*Custody and parenting time*

Mother argues that the district court abused its discretion by not incorporating an order for custody and parenting time. We are not persuaded. "Upon notice and hearing, the [district] court *may* . . . award temporary custody or establish temporary parenting time with regard to minor children . . . ." Minn. Stat. § 518B.01, subd. 6(a)(4) (emphasis added); *see also* Minn. Stat. § 645.44, subd. 15 (2014) (defining "[m]ay" as "permissive"). Therefore, the district court did not abuse its discretion by choosing not to address custody and parenting time.

**Affirmed.**